[L.A. No. 26678. In Bank. March 24, 1964.]

ROBERT P. McCULLOCH, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

Brady & Nossaman, Walter L. Nossaman and Joseph L. Wyatt, Jr., for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, Jay L. Shavelson and Harry W. Low, Deputy Attorneys General, for Defendant and Respondent.

TOBRINER, J.—This case involves the state income tax consequences of a terminal distribution of the income accumulated by a discretionary trust during the period of the

beneficiary's residence in California. Plaintiff, the beneficiary of the trust and one of the trust's three trustees, protests California's assessment of a tax deficiency upon the accumulated income distributed to him. We find that plaintiff's California residence established sufficient contact of the trust with this state to subject it to California income tax. Since the trust failed to pay this state's tax upon its annual income, California can constitutionally tax the beneficiary at the time he receives the accumulated income; he is liable for the tax owed by the trust upon such annual income.

Plaintiff, a resident of Los Angeles, became entitled in 1951 to a terminal distribution of the assets of a testamentary trust created for his benefit. The assets which he accordingly received included income which the trust accumulated during the five years from 1946 through 1950 while he thus resided in California. Because he did not include with his income from all other sources the five-year trust accumulation, the Franchise Tax Board assessed an income tax deficiency against plaintiff for the year 1951. We pass here only upon his income tax liability for that portion of the distribution.[1]

Plaintiff paid the deficiency assessment under protest; when the Franchise Tax Board denied his claim for refund, plaintiff sought recovery of the payment in the superior court (Rev. & Tax. Code, § 19082), contending that the accumulated trust income of prior years could not properly be subjected to California income tax in the year when plaintiff received it. The trial court denied plaintiff's claim for refund.

We find that the Franchise Tax Board properly imposed upon plaintiff liability for income taxes upon the accumulated income distributed by the trust but that the board in computing the tax should not have included in plaintiff's regular income for 1951 the lump sum of such accumulation. Plaintiff, as the distributee of trust assets, owes California income taxes which the *trust*, as a separate taxable entity, incurred upon its income during *each of the five prior years as it was earned*. As we shall explain, the beneficiary's resi-

---

[1]Plaintiff is a cash basis taxpayer whose tax year is coextensive with the calendar year. He declared as income during 1951 only that portion of the distribution which represented income received by the trust during that year; the parties concede that plaintiff incurred current tax liability for the trust's 1951 income, but the Franchise Tax Board challenges plaintiff's omission from his 1951 tax return of the accumulated income for the five prior years.

dence in California during this period subjected the trust to liability for state income taxes on its undistributed income.

As the stipulated facts show, plaintiff's grandfather, who was not a California resident at the time of his death, named plaintiff as beneficiary of a testamentary trust. Plaintiff shared the administration of this trust with his brother, a Missouri resident, and a third trustee, the St. Louis Union Trust Company of Missouri.

The grandfather created testamentary trusts for the benefit of each of his grandchildren. He authorized the trustees to distribute annually to those beneficiaries over the age of 25 "such part of the net income of their respective portions held in trust as may be necessary or advisable to assist them in business, professionally or otherwise." Thereafter, "the net income of the trust estate, or of the *respective trusts*, not disbursed from year to year shall be *added to the principal* and thereafter invested and disbursed as herein authorized." (Italics added.)

As each grandchild successively reached the ages of 25, 30, and 35 years, he became entitled to distribution of specified amounts of trust assets; as each grandchild attained the age of 40, he was to receive the terminal distribution of his portion of the principal together with the income accumulated for him. Any scheduled distribution or termination of the trust might be postponed if the trustees concluded that the respective beneficiary could not capably manage the funds.

In addition, the trust prohibited anticipation of payments by a beneficiary or the alienation or disposition of his or her interest in the trust. The interest of any grandchild who dies before the trust had terminated as to him was to pass to his heirs-at-law who were related by blood to the settlor; the trust provided for the continuing support of the widow of any deceased male grandchild.

The trust paid state income taxes to Missouri upon its income for the years 1946 to 1950, inclusive; it paid no income tax to California during that period. Plaintiff, as beneficiary, did not include in his computations of personal income tax for those years any of the undistributed income earned by the trust. The Revenue and Taxation Code imposes upon the trust the obligation to pay state taxes applicable to discretionary annual income accumulations retained by the trust. (See Sabine, *Constitutional and Statutory Limits on the Power to Tax* (1960) 12 Hastings L.J. 23, 38, 39.) If this trust failed to pay California income tax validly imposed

upon its earnings, plaintiff became liable for payment at the time of distribution.

We consider the problem, first, from the standpoint of statutory construction, and, second, from the constitutional aspects.

California has evolved a comprehensive system for the taxation of trust income patterned upon the federal tax structure, which treats the trust as a separate economic entity.[2] The statute requires the trustee to pay, on behalf of the trust, taxes due on the taxable income of the corpus; such income includes income which the trust accumulates or holds for future distribution, whether the interest of the beneficiary is absolute, contingent, or vested subject to divestment.[3] Former section 18106[4] of the Revenue and Taxation Code, which applies to this case, provides: "If, *for any reason*, the taxes imposed on income of a trust which is *taxable to the trust* because the fiduciary or beneficiary is a resident of this State are *not paid when due and remain unpaid* when *such income* is distributable to the beneficiaries ... *such income* shall be taxable to the beneficiaries when distributable to them...." (Italics added.)

This section forms one of the foundation stones in the

---

[2] "[W]e do not forget that the trust is an abstraction, and that the economic pinch is felt by men of flesh and blood. Even so, the law has seen fit to deal with this abstraction for income tax purposes as a separate existence, making its own return under the hand of the fiduciary and claiming and receiving its own appropriate deductions." (*Anderson* v. *Wilson* (1933) 289 U.S. 20, 27 [53 S.Ct. 417, 77 L.Ed. 1004, 1010].)

[3] Section 17731 of the Revenue and Taxation Code today incorporates the substance of former Revenue and Taxation Code sections 18101 and 18105. Section 18101 of the Revenue and Taxation Code at the date of distribution stated in part: "The taxes imposed by this part upon individuals apply to the income of estates or of any kind of property held in trust ... including: (a) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust. ... (d) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated."

Section 18105 of the Revenue and Taxation Code provided in part: "Taxes on income of an estate or trust which is taxable to the estate or trust ... shall be paid by the fiduciary."

[4] Revenue and Taxation Code section 17745 now contains this identical language. Although in determining plaintiff's tax obligation we look to the statutory scheme then effective, we note that these statutes have not been altered in substance; only the numbering is changed.

192

structure of rules applying California income taxes to trust income. ■ As to a trust which has contacts that are partly local and partly foreign, the sections provide that the entire undistributed income becomes taxable by California "if the *fiduciary or beneficiary* is a resident" of this state. (Rev. & Tax. Code, § 18102, now incorporated in § 17742. Italics added.)[5]

■ California taxes the trust upon that portion of the annual income which the trust holds for eventual distribution to the California resident beneficiary. If the trustee fails to pay the tax for the trust *annually as it earns the income,* the California resident beneficiary becomes liable for such tax when the previously earned income is distributed to him.

■ The statute refers to the *income* of a trust; it imposes upon the beneficiary the tax liability which attaches to "such income." The Legislature manifestly relied upon the traditional concept of "income" in selecting this word. Webster's New International Dictionary, 2d edition, defines income as "That gain or recurrent benefit ... which proceeds from labor, business or property. .."; the definition obviously expresses the common understanding of the word's meaning. ■ "Principal" constitutes the capital sum or corpus. Under standard principles of trust accounting, and, indeed, pursuant to the specific directions of the instant trust instrument, income accumulations were added to principal. ■ Once the income has been entombed as principal within the trust, we cannot later resurrect it as income.

Neither the arguments of the Franchise Tax Board nor plaintiff refute this proposition.

■ We cannot accept the position of the Franchise Tax Board that the beneficiary becomes taxable at the time of distribution upon the *total* amount accumulated by the trust during the five prior years as though it were part of the income of the beneficiary in the year he received it. Thus the Franchise Tax Board contends that section 18106 imposes upon the beneficiary a new and different tax, measured by the amount of the trust distribution which represented in-

---

[5]If the basis for taxing trust income is the residence here of the trustee, and other trustees reside elsewhere, the tax is apportioned according to the interest represented by the resident trustee. (Rev. & Tax. Code, § 18103, now found in § 17743.) If the basis for taxing trust income is the residence here of a beneficiary, and other beneficiaries reside elsewhere, the tax is apportioned according to the interest represented by the resident beneficiary. (Rev. & Tax. Code, § 18104, now found in § 17744.)

come accumulated while the beneficiary resided in California, yet payable only if the trust failed to pay California income taxes.

The theory of the Franchise Tax Board fails for two reasons. First, as we have indicated, the board's interpretation of section 18106 distorts the distinction between income and principal; the statute indicates only that if trust income taxes remain unpaid, these taxes are to be met by the beneficiary when the assets are distributed to him. Second, the position which the Franchise Tax Board adopts would construe section 18106 as a penalty upon the beneficiary. If the trust paid its California income taxes, the beneficiary would not be required to pay any tax on the accumulation when he received it; if the trust failed to pay such California income taxes, the beneficiary, who is without fault, would be penalized by the exaction of a tax which treated the whole accumulation as income in the year of its distribution. We find no basis for holding that the Legislature intended so harsh a result.

Nor can we accept plaintiff's position that California cannot properly subject the beneficiary to any tax liability whatsoever on the income accumulation. Plaintiff contends that until he received the final distribution of trust assets at age 40, he held only a defeasible interest which could not support the imposition of the tax. Yet, as the condition of plaintiff's survival without mental incapacity was annually fulfilled, he continued to enjoy his right to the advantages flowing from additional accumulations of income in the trust. Plaintiff's survival to age 40 is material only to his *personal* liability for payment of the tax liability of the trust as a transferee of the assets under the terms of section 18106.

The further point urged by plaintiff, that accumulated income had become principal when plaintiff received the distribution, does not obliterate the liability imposed by section 18106. The tax rests upon earnings which were clearly income as these accrued each year to the fictionalized legal entity, the trust. Plaintiff bears statutory liability as a transferee for taxes "due ... and unpaid" by the trust upon such income.

This statutory system of taxing trusts, as we shall explain, encounters no constitutional prohibitions. Plaintiff contends that we must condemn the tax as failing in due process because California could not have taxed him as a beneficiary of the income during the years of its accumulation; that the

194

evidence of ownership of the trust assets and the accumulated income reposed in Missouri from 1946 to 1951 and during that period plaintiff did not actually receive, own, or control the income to connect it with California. To narrow the issue further, in the words of Sabine, "The constitutional validity of a tax by the state of residence of the trustee on accumulated net income appears to have acceptance by the United States Supreme Court. The Court, however, has not yet had occasion to decide the validity of a tax with respect to accumulated income where the trustee is a nonresident and the tax is founded on residence of the beneficiary." (Sabine, *Constitutional and Statutory Limits on the Power to Tax* (1960) 12 Hastings L.J. 23, 39; fns. omitted.)

 We find no reason in constitutional principles or in practical application of such principles why the tax founded upon the residence of the beneficiary should not be sustained. We shall point out that just as the protection and benefits afforded by the state of the residence of the trustee serve as the basis for the constitutionality of the tax as to him, so do those factors serve as the basis for the constitutionality of the tax as to the beneficiary. Moreover, the possibility of double taxation does not defeat the imposition of the tax. (*State Tax Com.* v. *Aldrich* (1941) 316 U.S. 174 [62 S.Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436]; *Curry* v. *McCanless* (1939) 307 U.S. 357 [59 S.Ct. 900, 83 L.Ed. 1339, 123 A.L.R. 162]; *Graves* v. *Elliott* (1939) 307 U.S. 383 [59 S.Ct. 913, 83 L.Ed. 1356]; *Guaranty Trust Co.* v. *Virginia* (1938) 305 U.S. 19 [59 S.Ct. 1, 83 L.Ed. 16].)

The decisions of the United States Supreme Court clearly recognize that the residence of a trustee constitutes a valid basis for a local property tax upon trust corpus apportioned to the trustee's interest (*Greenough* v. *Tax Assessors* (1947) 331 U.S. 486 [67 S.Ct. 1400, 91 L.Ed. 1621, 172 A.L.R. 329])[6]; in like manner property taxes apportioned to the

---

[6]The *Greenough* case held valid an apportioned personal property tax of the City of Newport, Rhode Island. Since the trust was administered by two trustees and one trustee resided in the city and state, the city levied its tax upon one-half the value of capital stock held in trust. The court determined that although the beneficiary and the second trustee resided in a different state and the trust was there administered, the benefit and protection afforded the single resident trustee supported the tax. In reaching this decision, the court said, "The trustee of today moves freely from state to state. The settlor's residence may be one state, the seat of a trust another state and the trustee or trustees may live in still another jurisdiction or may constantly change their residence. The official life of a trustee is, of course, different from his

value of the equitable interest may be imposed by the state of the beneficiary's residence. (*Stewart* v. *Pennsylvania* (1941) 312 U.S. 649 [61 S.Ct. 445, 85 L.Ed. 110], affirming 338 Pa. 9 [12 A.2d 444]; *Safe Deposit & Trust Co.* v. *Virginia* (1929) 280 U.S. 83 [50 S.Ct. 59, 74 L.Ed. 180, 67 A.L.R. 386]; *Commonwealth* ex rel. *Martin* v. *Sutcliffe* (1940) 283 Ky. 274 [140 S.W.2d 1028]; *Rowe* v. *Braden* (1933) 126 Ohio St. 533 [186 N.E. 392]; *Bingham's Admr.* v. *Commonwealth* (1923) 199 Ky. 402 [251 S.W. 936].)[7] The laws of the state of residence afford benefit and protection to the resident beneficiary or trustee.

Moreover, the entire income of a discretionary trust, whether distributed or not, may be taxed by the state where all trustees reside, since that state provides to the trustees the protection requisite to the receipt and control of the disposition of trust income. (*Guaranty Trust Co.* v. *Virginia* (1938) 305 U.S. 19 [59 S.Ct. 1, 83 L.Ed. 16].) Likewise, the state of the beneficiary's residence may tax the beneficiary on income currently paid to him by a trust held and administered by a trustee in another state: ''The beneficiary is domiciled in Massachusetts, has the protection of her laws, and

---

personal. A trust, this Court has said, is 'an abstraction.' For federal income tax purposes it is sometimes dealt with as though it had a separate existence. ... This is because Congress has seen fit so to deal with the trust. This entity, the trust, from another point of view consists of separate interests, the equitable interest in the res of the beneficiary and the legal interest of the trustee.'' (*Greenough* v. *Tax Assessors* (1947) 331 U.S. 486, 493-494 [67 S.Ct. 1400, 91 L.Ed. 1621, 1628, 172 A.L.R. 329, 335-336]; fns. omitted.)

[7]We note also that bank deposits representing credit obligations in foreign banks may be taxed by the state of the owner's residence. (*Fidelity Columbia Trust Co.* v. *Louisville* (1917) 245 U.S. 54 [38 S.Ct. 40, 62 L.Ed. 145].) Two decisions which superficially appear to prohibit property taxes imposed by the state of the beneficiary's residence upon trust corpus turn upon different principles of law than those which are here applicable. *Brooke* v. *Norfolk* (1928) 277 U.S. 27 [48 S.Ct. 422, 72 L.Ed. 767], dealt with inequities which might result if the tax were not apportioned and thus precluded a life beneficiary's state of residence from exacting a property tax based upon the full value of trust intangibles, when the trust was being administered in a different state. *Senior* v. *Braden* (1935) 295 U.S. 422 [55 S.Ct. 800, 79 L.Ed. 1520, 109 A.L.R. 794], prohibited the state of the beneficiary's residence from imposing a property tax upon a trust corpus of *real* property situated in another jurisdiction, construing it as an attempt to impose taxes upon realty located beyond the taxing state's jurisdiction. These decisions do not inhibit taxation by the state of the beneficiary's residence upon the income of a trust administered for the beneficiary in another jurisdiction.

there receives and holds the income from the trust property."
(*Maguire* v. *Trefry* (1920) 253 U.S. 12, 17 [40 S.Ct. 417,
64 L.Ed. 739, 751].) In similar fashion, the bene-
ficiary's state of residence may properly tax the *trust* on
income which is payable in the future to the beneficiary,
although it is actually retained by the trust, since that state
renders to the beneficiary that protection incident to his
eventual enjoyment of such accumulated income.

 The tax imposed by California upon the beneficiary
is constitutionally supported by a sufficient connection with,
and protection afforded to, plaintiff as such beneficiary.
Plaintiff in the instant case has, in his role as beneficiary
during the years of his residence in this state, enjoyed the
protection accorded by California for his eventual receipt of
these assets. California grants the beneficiary the interim
protection of its laws so that he may ultimately obtain the
benefit of the accumulated income. Nor was plaintiff pro-
tected only in his personal welfare by the State of California
which extended the shelter of its governmental institutions
over plaintiff's legal interests as well. If plaintiff had failed
to survive to age 40, his trust interest would have been distri-
buted to his heirs who were related by blood to the settlor,
special provisions being made for plaintiff's wife; these per-
sons, his family, resided in California. Plaintiff and his
family during their residence here thus enjoyed the protec-
tion of California's courts in the enforcement of the spend-
thrift provisions which insured against improvident or invol-
untary transfers of the equitable interests. (*Sinclair* v. *Crab-
tree* (1931) 211 Cal. 524 [296 P. 79]; *Kelly* v. *Kelly* (1938)
11 Cal.2d 356, 365 [79 P.2d 1059, 119 A.L.R. 71].) Plaintiff
further could enlist the aid of California courts to enforce
his equitable rights or redress trustee misconduct. (See
*McElroy* v. *McElroy* (1948) 32 Cal.2d 828, 831 [198 P.2d
683]; *Estate of Knox* (1942) 52 Cal.App.2d 338, 348 [126
P.2d 108].)

 California thus became entitled to claim reciprocal
obligations for "protection which it has afforded ..." and
"benefits which it has conferred by the fact of being an
orderly, civilized society. ... The simple but controlling ques-
tion is whether the state has given anything for which it can
ask return. ... The fact that a tax is contingent upon events
brought to pass without a state does not destroy the nexus
between such a tax and transactions within a state for which
the tax is an exaction." (*Wisconsin* v. *J. C. Penney Co.*

(1940) 311 U.S. 435, 444-445 [61 S.Ct. 246, 85 L.Ed. 267, 270-271, 130 A.L.R. 1229, 1233].) Plaintiff's residence here confers the essential "minimum connection" (*Miller Brothers Co.* v. *Maryland* (1954) 347 U.S. 340, 344 [74 S.Ct. 535, 98 L.Ed. 744, 748]) necessary for due process of law.[8]

Indeed, to hold that California could not levy this tax upon the beneficiary when the trust is distributed to him would expose this state to serious impediments in the collection of its taxes. ▮ The purpose of section 18106 of the Revenue and Taxation Code in imposing upon the beneficiary at the time of the trust distribution his personal obligation to pay taxes due, but unpaid, by the trust is to avoid the difficulties which the state might otherwise encounter in attempting to enforce tax collection directly against foreign trustees. (See *Hanson* v. *Denckla* (1957) 357 U.S. 235, 250-255 [78 S.Ct. 1228, 2 L.Ed.2d 1283, 1295-1299], and *Atkinson* v. *Superior Court* (1957) 49 Cal.2d 338 [316 P.2d 960].) The transferee tax thus levied assures this state that resident beneficiaries of the trusts administered elsewhere obtain no special advantage over California taxpayers.[9]

---

[8]The state where the owner of a legal or equitable interest in the subject matter of a tax resides thus acquires the authority to impose tax liability. The trust and its income are within California taxing jurisdiction because the owner of the equitable interest resides here and receives the benefit and protection of this state's governmental institutions. "[T]he power to tax intangibles [is] not restricted to one State whether 'we regard the right of a state to tax as founded on power over the object taxed . . . through dominion over tangibles or over persons whose relationships are the source of intangible rights, or on the benefit and protection conferred by the taxing sovereignty, or both.'" *State Tax Com.* v. *Aldrich* (1941) 316 U.S. 174 [62 S. Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436], relying upon and quoting from *Curry* v. *McCanless* (1939) 307 U.S. 357, 367-368 [59 S.Ct. 900, 83 L.Ed 1339, 1347-1348, 123 A.L.R. 162, 170-171].) "[T]he existence of different forms of ownership interests in intangible personal property may make such intangibles amenable to taxation by more than one sovereignty, and that 'double taxation', that is, taxation of such different ownership in the same property, even though in part overlapping, is not in itself a violation of the due process clause of the Fourteenth Amendment. ... The right of Pennsylvania to tax property which, in the view of the law, is within its jurisdiction, cannot be denied or impaired because another state also may have the right to tax one of its own residents who enjoys another kind of ownership in the funds constituting the trust res." (*Stewart* v. *Pennsylvania* (1940) 338 Pa. 9, 17-18 [12 A.2d 444]; affd. in *Stewart* v. *Pennsylvania* (1941) 312 U.S. 649 [61 S.Ct. 445, 85 L.Ed. 1101].)

[9]"[W]hile the complexity of the trust itself and of the relations of the parties thereto complicates the problem of effective taxation, it

 Nor does the possibility of taxation upon such income by more than one state impair the state's right to exact its own income taxes fixed pursuant to valid standards.[10] Even though the trust may be administered in another jurisdiction by a trustee residing outside the state of the beneficiary's residence, that state may levy its state personal income tax on current trust income distributions to him. (*Maguire* v. *Trefry, supra*, 253 U.S. 12.) California may tax the entire income of a discretionary trust administered by a resident trustee whether he elects to distribute any part of such income or not, even though income which the trust distributes to an out-of-state beneficiary may also be subject to taxation elsewhere. (*Guaranty Trust Co.* v. *Virginia* (1938) 305 U.S. 19, 22 [59 S.Ct. 1, 83 L.Ed. 16].)

We conclude that California could constitutionally tax plaintiff as the resident beneficiary upon the accumulated income when it was distributed to him. But plaintiff in the instant case was simultaneously beneficiary and a trustee. No possible doubt attaches to California's constitutional power to tax plaintiff as a trustee. His secondary role as a trustee reinforces the independent basis of taxing plaintiff as beneficiary. Having avoided the payment of this state's tax upon the trust income over the previous years, plaintiff is *a fortiori* liable under section 18106.

As a consequence, plaintiff is liable for taxes to which the trust was subject on the income it accumulated for the years 1946 through 1950 since these taxes remained unpaid by the trust when plaintiff received the distribution in 1951.

---

should not obstruct the claims of a state to tax trust income, so far as possible, as it would in the absence of a trust. Trust income is accorded protection in its production, receipt and enjoyment to the same extent as other income; it measures in like manner ability to pay. It should, therefore, be taxed so far as possible upon the same basis. If the obstacles interposed by the trust device are to be circumvented, *jurisdiction to tax should be found wherever substantial claims to tax are reinforced by effective power to compel payment.*" (Italics added.) (Traynor, *State Taxation of Trust Income* (1937) 22 Iowa L.Rev. 268, 271-272.)

[10]The state's sovereign power to tax extends to the taxation of income of nonresidents derived from sources within this state (*Shaffer* v. *Carter* (1920) 252 U.S. 37 [40 S.Ct. 221, 64 L.Ed 445]) as well as the income of residents derived from sources outside this state (*Lawrence* v. *State Tax Com.* (1932) 286 U.S. 276 [52 S.Ct. 556, 76 L.Ed. 1102, 87 A.L.R. 374]; *New York* ex rel. *Cohn* v. *Graves* (1936) 300 U.S. 308 [57 S.Ct. 466, 81 L.Ed 666, 108 A.L.R. 721]; see also *Buchanan* v. *Tax Com.* (1945) 195 Okla. 43 [154 P.2d 977].)

The case is remanded with instructions to the trial court that plaintiff's tax liability should be recomputed in conformance with this opinion. Each side shall bear its own costs on appeal.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Peek, J., concurred.

Appellant's petition for a rehearing was denied April 22, 1964.