## Boies Estate

*Warren, Hill, Henkelman & McMenamin,* for accountants.

*Joseph Marzzacco,* for guardian ad litem and trustee ad litem.

SIROTNAK, P. J., May 2, 1967.—Decedent, Elizabeth D. Boies, a life-long resident and domiciliary of Lackawanna County and the Commonwealth of Pennsylvania, died July 3, 1926, testate, and leaving to survive her:

(1) Ethel Boies Morgan, who died December 26, 1936, leaving to survive her no lineal descendants;

(2) David Boies, who died June 2, 1928, leaving to survive him a son, David Boies, Jr., and two daughters, Elizabeth Boies Schley and Mari Boies Watts; and

(3) Helen Boies Belden, who died August 15, 1942, leaving to survive her two children, Elizabeth Belden Cary and Henry Belden . . .

5. The last will and testament of decedent contains, inter alia, and as applicable to the fund now being audited and distributed, the following provisions:

"TWENTY EIGHTH. All the rest, residue and remainder of my property and estate, of whatsoever kind and character and wheresoever situate, of which I may die seized or possessed or to which I may be in any manner justly entitled at the time of my death, and all such sums as may come into my estate from lapsed or defeated legacies or trusts, I give, devise and bequeath in fee simple and absolutely to the Scranton Trust Company of Scranton, Pa., or its corporate successor, and David Boies, or his successor as hereinafter provided, as Trustees, in and upon the following trusts and no others, viz.:

"(a) In trust to hold, manage and control the same, to collect all rents, issues, income and profits therefrom, to pay all taxes, insurance, charges and other proper expenses connected therewith, and with full power to sell and convey any of my property and estate, as in their best judgment it may be expedient to do, without liability upon the part of any purchaser to see to the application of the purchase money; the proceeds of any sales to be reinvested from time to time as judiciously, advantageously and securely as my said Trustees may be able to do. I direct that stocks, bonds and other securities held by me at the time of my death shall be held by my Trustees to form part of the trusts created by my will, at such value as may be placed on the same by my Trustees, but they may sell or dispose

of the same, or any of them, whenever in their discretion they think proper. I expressly direct that my Trustees are not to be responsible or liable for or charged with any loss or depreciation that may arise from such securities, or any other securities forming part of any of the trusts created hereby, and I empower them to make investments and re-investments of trusts moneys in such other securities besides those recognized by law as they may think proper. I further direct that in case of any difference between my Trustees, the judgment of the individual Trustee shall prevail.

"(b) In further trust, to pay the net income of my said estate to my daughter, Ethel Boies Morgan, my son, David Boies, and my daughter, Helen Boies Belden, in equal shares as long as they shall live quarterly from the time of my death, insofar as practicable, without power of alienation or anticipation; or to apply the said income to the use and benefit of any of my children as the same shall accrue, if in their judgment it shall be most to the interest of any of my children so to do: no part of the said income to my estate to be at any time, or in any manner, subject to the payment of any indebtedness of my said children, whether existing at the time of my death or arising subsequently, either wholly or as to any part thereof, or to any assignment, conveyance, mortgage, pledge or legal process against any of them, or any other form of alienation by any of them, voluntary or involuntary; nor shall any payment of the said income be made otherwise than by delivery thereof into their own hands after its accrual, either in money or by check or draft, payable to their own separate order. And upon the death of any of my children, to pay to the child or children of such deceased child or children, the share of the net income arising from my estate that was previously paid to their deceased parent, and

upon the death of any of my children without lineal descendants, to pay the income of my estate in equal shares to my surviving children and to the lineal descendants of any of my children per stirpes; subject to the same limitations as hereinbefore expressed.

"(c) I empower my grandchildren to dispose by will of the share of the principal of my estate from which I have directed that they receive the net income on the death of their parent, and I direct my Trustees to distribute, assign and convey such principal of my estate in the way my grandchildren dispose by will. However, I direct that my trust estate shall cease and be determined on the decease of my last living grandchild in being at the time of my decease, or in case a child of mine survives longer, then at the death of my last surviving child.

"(d) In case of the death of my son, David Boies, or his incapacity to act as Trustee of my estate, my surviving children, or in the case of the death of all my children, then my grandchildren shall name a Trustee of my estate to act with the Scranton Trust Company aforesaid".

6. The trust created by decedent, under the above-quoted item of her will, is now being administered by the Northeastern Pennsylvania National Bank of Scranton, Pa., cotrustee (successor to Scranton Trust Company) and Elizabeth Boies Schley and Elizabeth Belden Cary, cotrustees (successors to David Boies), of White House, N. J., and Lutherville, Md., respectively.

7. Henry Belden, a grandson of decedent, who has a one-fourth interest for life in the income from said trust, has resided in California since 1947. On December 14, 1943, he executed a partial release of power of appointment which reads, in part, as follows:

"NOW, THEREFORE, I, the undersigned, HENRY B. BELDEN, hereby release, renounce re-

linquish and surrender the power of appointment and power to dispose by will granted to me by my grandmother Elizabeth D. Boies, in her said last will and testament, except the part thereof which permits me to appoint within a class which does not include any others than my spouse, my descendants, spouse of such descendants, descendants of my grandmother (expressly including any child or children, if any, adopted by my sister, Elizabeth B. Roberts), and spouses of such descendants, intending hereby to divest myself completely of all rights and privileges, except as aforesaid, granted to me by said power of appointment and power to dispose by will as if the same had not been granted . . ."

His spouse is Marjorie Belden, and his descendants are: Betty Belden, daughter, born February 3, 1947; Jerry Belden, son, born February 3, 1947; Laura Ritchie Belden, born October 3, 1950 (adopted).

All of said parties in interest are living.

8. On May 18, 1965, the Franchise Tax Board of the State of California sent the following letter to the Northeastern Pennsylvania National Bank and Trust Company:

"May 18, 1965

"Northeastern Pennsylvania National Bank
and Trust Company
Scranton, Pennsylvania

Re: Elizabeth D. Boies (Deceased) Trust

"Taxable Years 1947 through 1964

"Gentlemen:

"Enclosed are California Fiduciary Tax Returns for the years 1947 through 1964. These are submitted because a check of our files fails to locate returns for the Elizabeth D. Boies (Deceased) Trust. Under section 17744 of the California Personal Income Tax Law, a trust is required to file a California Fiduciary

Tax return when one or more *beneficiaries* is a California resident. In this case, the beneficiaries of one-fourth of the trust are California residents and have been California residents since 1947.

"Demand is hereby made that the trust file a California Fiduciary Tax return for each of the years 1947 through 1964 inclusive, reporting one-fourth of the taxable income.

"Your cooperation will be appreciated. A return envelope is provided for your convenience.

> "Very truly yours,
> /s/ Douglas E. Dick
> Douglas E. Dick
> Auditor"

The law of California relating thereto reads as follows:

Section 17742 provides: "(a) Except as otherwise provided in Articles 1 to 6, inclusive, of this chapter, the income of an estate or trust is taxable to the estate or trust. The tax applies to the entire taxable income of an estate, if the decedent was a resident, regardless of the residence of the fiduciary or beneficiary, and to the entire taxable income of a trust, if the fiduciary or beneficiary (*other than a beneficiary whose interest in such trust is contingent*) is a resident, regardless of the residence of the settlor . . ." [The portion in italics was enacted in 1963.]

Section 18405 provides that every fiduciary for a trust with net income of over $100 or gross income of over $5,000 shall file a return: 61 Cal. Code.

The California Franchise Tax Board contends that the shares of General Motors Corporation stock distributed to the corporate trustee by divestiture from the E. I. duPont de Nemours Company, as shown in the eleventh partial account, are income and not principal; that these shares have not been distributed

to the income beneficiaries of the trust for California income tax purposes; that the corporate trustee has accumulated income in an amount equal to the value of the shares of stock; and that, therefore, the trust is liable for the income tax on the accumulated income.

The account shows receipt of General Motors stock on July 17, 1962, at $858,375; on January 17, 1964, at $1,023,840; and on January 7, 1965, at $1,729,125.

Henry Belden, through his accountant, Ray Williamson, of Santa Barbara, Calif., has asked the corporate trustee in Pennsylvania to file the returns and pay whatever tax may now be due under California law, and states that even though (1) the General Motors stock is not income under Pennsylvania law, and (2) the corporate trustee is beyond the jurisdiction of the California courts, Mr. Belden's appointees will be liable for the tax when the assets of the trust are distributed at the time of his death and the penalties and interest will be greater at that time than if the tax is paid now.

Apparently, the California Franchise Board relies upon McCulloch v. Franchise Tax Board, 61 Cal. 2d 186, 390 P. 2d 412, for its authority to levy the seven percent income tax. This amounts to approximately $63,198.

On March 4, 1966, Attorney Joseph Marzzacco was appointed guardian ad litem for all minors and all persons now unborn or unknown having a possible interest in the estate of Elizabeth D. Boies, deceased.

The matter came on for hearing on January 6, 1967, and all interested parties received notice of the time and place of hearing, including the California Franchise Tax Board, which did not see fit to make any appearance whatsoever.

The petition for distribution sur the eleventh partial account of the trustees of decedent's estate pre-

sents two questions of law for the court to determine, which are:

(1) Is the General Motors stock which the trustee received, pursuant to United States court order of divestiture from E. I. duPont de Nemours Company, income or principal?

(2) Are the trustees under any legal duty to file a California fiduciary tax return as requested by the California Franchise Tax Board, or are they liable to pay from the trust any California income tax?

The answer to the first question is found in Anthony Estate, 423 Pa. 401, in which our Supreme Court held that the distribution of the General Motors stock should be allocated by the trustees of the testamentary trust to corpus. This is the law of Pennsylvania, which this court must follow.

The McCulloch case, supra, deals with income accumulated by the trustees. In that case, California assessed an income tax on the accumulated income of a nonresident trust. Since the trust did not pay the taxes pursuant to a provision of the California Tax Code, the tax was collected from the resident beneficiary upon distribution of the accumulated income. The California Supreme Court, relying upon the beneficiary's residence in the State, held that collection of the tax did not violate the due process clause of the fourteenth amendment.

The Boies trust before the court has its situs here, and from its inception has always been administered under the supervision of our court. Obviously, the law of Pennsylvania governs the situation: Orphans' Court Act of August 10, 1951, 20 PS §2080.301. We have jurisdiction to determine the interest of all claimants, resident or nonresident, with respect to the administration of the trust and the liabilities, if any, incurred by the trustees to the beneficiaries of the trust. See 3 Scott Trusts §220 (3d ed. 1967),

Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306 (1950). This does not seem to be arguable and no useful purpose would be served to labor the issue.

What needs to be decided by this court is whether the nonresident trustees must file the California tax returns in this case, especially since the California beneficiary requests that they be filed and any tax found due be paid by the trust.

The California taxing agency says the General Motors stock is accumulated income in the hands of the local trustees. Our Supreme Court has explicitly decided it is not income and that it is corpus or principal. So we have what appears to be a conflict of law.

"A testamentary trust of movables is administered by the trustee according to the law of the state of the testator's domicil at the time of his death unless the will shows an intention that the trust should be administered in another state.

"Comment:

"a. Testator's intention. In the case of a testamentary trust, the state in which the testator intended the trust to be administered is presumptively the state of the testator's domicil at the time of his death, since it is natural to suppose that he intended the trust to be administered in the same place in which his estate was to be administered, and under the direction of the courts of that state": Restatement, Conflict of Laws §298.

Our Supreme Court, in Anthony Estate, supra, has held the trustees have no accumulated income of the beneficiary. Shall we order the trustees to perform a vain act of acceding to the request of the California Franchise Tax Board to file returns, with the knowledge that there is no income upon which to assess an income tax? We will not order the trustees to file any California tax return whatsoever. Henry Belden's in-

terest is a life estate with a special power of appointment. His suggestion that the trustees comply with the request of the California Franchise Tax Board does not alter our view that the return need not be filed. Any other reasoning would be obtuse. There is no certainty that his appointees under his power of appointment will ever be required to pay the alleged tax on the so-called "accumulated income". That calculated risk is one with which this court at this time is not concerned. Moreover, we are unable to foresee the necessary proof of the key elements for California ever to assess any beneficiary of this trust for the income tax which their statute, supra, purports to levy.

It is the opinion of this court, and we do so hold as a matter of law, that the trustees need not file any California tax returns and that the trust is not liable to pay any California income tax from the trust . . .

And now, May 2, 1967, the eleventh partial account of accountants is confirmed finally and this adjudication is confirmed nisi.