Justice ERVIN dissenting.
As the majority correctly indicates, the proper resolution of this case hinges upon the extent, if any, to which the taxpayer had sufficient minimum contacts with North Carolina to satisfy federal due process requirements. Although we are required to make what I believe to be a close call in this case, I feel compelled to conclude, after careful scrutiny of the record in light of the applicable relevant legal standard, that taxpayer "purposefully avail[ed] itself of the benefits of an economic market" in North Carolina despite having "no physical presence in the State." Quill Corp. v. North Dakota , 504 U.S. 298, 307, 112 S.Ct. 1904, 1910, 119 L.Ed.2d 91, 102-03 (1992) (citing Burger King Corp. v. Rudzewicz , 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528, 543 (1985) ). As a result, I respectfully dissent from my colleagues' decision.
According to the undisputed facts contained in the record as identified by the trial court, Joseph Lee Rice, III, established the Rice Family 1992 Trust for the benefit of his children in 1992. The Family Trust was created in New York, with the trust instrument providing that the Family Trust was to be governed by New York law. In 2005, David Bernstein, a resident of Connecticut, was appointed trustee of the Family Trust and continued to act in that capacity throughout the time period at issue in this case. In 2006, Mr. Bernstein, physically divided the Family Trust into three trusts, one of which, plaintiff Kimberly Rice Kaestner 1992 Family Trust, was intended to benefit Kimberly Rice Kaestner and her three children, "all of whom were residents and domiciliaries of North Carolina in the tax years at issue." Mr. Bernstein served as the trustee of the Kaestner Trust following the division of the Family Trust into its three constituent parts.
Throughout the entire interval from 2005 through 2008, which are the tax years at issue in this case, the documents related to the Kaestner **145 Trust were kept in New York, while the custodian of the Kaestner Trust's assets was located in Boston, Massachusetts. No distributions were made to any beneficiary of the Kaestner Trust during the 2005 through 2008 tax years. During the period from 2005 through 2008, Mr. Bernstein communicated with Ms. Kaestner regarding the Kaestner Trust and provided her with accountings relating to the Kaestner Trust covering the periods from 22 December 2005 through 31 December 2006 and 23 June 2006 through 8 October 2009. In addition, Mr. Bernstein and the law firm with which he was affiliated provided Ms. Kaestner with legal advice regarding matters relating to the Kaestner Trust.
As the entire Court appears to agree, the resolution of this case hinges upon a proper understanding of the decision of the United States Supreme Court in Quill , which involved *52 a Delaware corporation that sold office equipment and had physical offices and warehouses in Illinois, California, and Georgia. Quill , 504 U.S. at 302, 112 S.Ct. at 1907, 119 L.Ed. at 100. Quill solicited business by using catalogs, flyers, and telephone calls and placing advertisements in national periodicals. Id . at 302, 112 S.Ct. at 1907, 119 L.Ed. at 100. As a result of its business activities, Quill had about 3,000 customers and made $1 million in sales in North Dakota during the relevant period. Id . at 302, 112 S.Ct. at 1908, 119 L.Ed. at 100. A North Dakota statute provided that retailers, including mail-order companies, were subject to a use tax "even if they maintain no property or personnel in North Dakota." Id . at 303, 112 S.Ct. at 1908, 119 L.Ed. at 100. The State argued that, despite Quill's lack of a physical presence within North Dakota, the State "had created 'an economic climate that fosters demand for' Quill's products, maintained a legal infrastructure that protected that market, and disposed of 24 tons of catalogs and flyers mailed by Quill into the State every year." Id . at 304, 112 S.Ct. at 1908-09, 119 L.Ed. at 101.
According to the United States Supreme Court, "[t]he Due Process Clause 'requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax' and that the 'income attributed to the State for tax purposes must be rationally related to values connected with the taxing State.' "[1] Id . at 306, 112 S.Ct. at 1909-10, 119 L.Ed.2d at 102 (first quoting Miller Bros. Co. v. Maryland , 347 U.S. 340, 344-45, 74 S.Ct. 535, 539, 98 L.Ed. 744 (1954) ;
**146 then quoting Moorman Mfg. Co. v. Bair , 437 U.S. 267, 273, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197 (1978) ). As the United States Supreme Court noted, it has "abandoned more formalistic tests that focused on [an entity's] 'presence' within a State in favor of a more flexible inquiry into ... [an entity's] contacts with the forum." Id . at 307, 112 S.Ct. at 1910, 119 L.Ed.2d at 102 (citing, inter alia , Int'l Shoe Co. v. Washington , 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ). "Applying these principles, we have held that if a foreign [entity] purposefully avails itself of the benefits of an economic market in the forum State, it may subject itself to the State's" collection of taxes "even if it has no physical presence in the State." Id . at 307, 112 S.Ct. at 1910, 119 L.Ed.2d at 103 (citing Burger King Corp. , 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 ). As a result, given that Quill had "purposefully directed its activities at North Dakota residents," its contacts with North Dakota were "more than sufficient for due process purposes." Id . at 308, 112 S.Ct. at 1911, 119 L.Ed.2d at 104.
The parties have spent considerable time and effort debating the extent, if any, to which the fact that the beneficiaries of the Kaestner Trust resided in North Carolina during the relevant tax years has any bearing on the required due process analysis. In reaching the conclusion that the residence of the beneficiaries has no bearing upon the proper resolution of this case, my colleagues have deemed Chase Manhattan Bank v. Gavin , 249 Conn. 172, 733 A.2d 782, cert. denied , 528 U.S. 965, 120 S.Ct. 401, 145 L.Ed.2d 312 (1999), and McCulloch v. Franchise Tax Board , 61 Cal. 2d 186, 37 Cal.Rptr. 636, 390 P.2d 412 (1964), to be essentially irrelevant. I am not inclined to completely disregard either of those decisions, which, to the best of my knowledge, appear to be the only cases decided by state courts of last resort to address the question that is before us in this case, while recognizing that there are distinguishing features which may serve to render them somewhat less persuasive than they might otherwise be.
Admittedly, the assertion of taxing authority over the inter vivos trust at issue in Gavin arose from a situation in which "the settlor of the trust was a Connecticut domiciliary when the trust was established and the beneficiary is a Connecticut domiciliary." Gavin , 249 Conn. at 183, 733 A.2d at 790. However, in upholding the taxability of the undistributed income held in an inter vivos trust, the Connecticut Supreme Court specifically stated that, "just as the state may tax the undistributed income of a trust based on *53 the presence of the trustee in the state because it gives the trustee the protection and benefits of its laws," "it may tax the same income based on the domicile of the sole noncontingent beneficiary because it gives her the same protections and benefits." **147 Id. at 205, 733 A.2d at 802. As a result, the Connecticut Supreme Court's decision with respect to the taxability of the undistributed income held in the inter vivos trust appears to me to hinge upon the residence of the beneficiary rather than the fact that the settlor had been a resident of Connecticut at the time that the inter vivos trust had been created.
I am loath to completely disregard McCulloch for similar reasons. Although the beneficiary of the trust at issue in McCulloch also served as one of the trustees, the California Supreme Court's analysis in that case clearly relies upon the status of the person in question as a beneficiary rather than upon his status as a trustee, with this fact being evidenced by the California Supreme Court's statement that "the beneficiary's state of residence may properly tax the trust on income which is payable in the future to the beneficiary, although it is actually retained by the trust, since that state renders to the beneficiary that protection incident to his eventual enjoyment of such accumulated income." McCulloch , 61 Cal. 2d at 196, 37 Cal.Rptr. 636, 390 P.2d at 419 (emphasis omitted). Similarly, while McCulloch antedates Quill and Burger King , the logic utilized by the California Supreme Court appears to me to rest upon the same considerations that underlie the United States Supreme Court's modern due process jurisprudence. For example, the California Supreme Court states that "[t]he tax imposed by California upon the beneficiary is constitutionally supported by a sufficient connection with, and protection afforded to, plaintiff as such beneficiary." Id . at 196, 37 Cal.Rptr. 636, 390 P.2d at 419. As a result, I am unable to agree with my colleagues' determination that neither Gavin nor McCulloch has any bearing upon the proper resolution of this case and am inclined to be persuaded by their logic to believe that, while not dispositive, the presence of the beneficiaries of the Kaestner Trust in North Carolina has some bearing on the proper performance of the required due process analysis.
I also cannot concur in the argument adopted by the Court of Appeals to the effect that the United States Supreme Court has already made our decision for us in Brooke v. City of Norfolk , 277 U.S. 27, 48 S.Ct. 422, 72 L.Ed. 767 (1928). Although Brooke has not been overruled, it antedates Quill and Burger King and rests upon the sort of formalistic, presence-focused approach that the United States Supreme Court rejected in those cases in favor of a less rigid "minimum connections" approach. See Quill , 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 ; Burger King , 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528. In addition, Brooke involved an attempt by one state to tax a trust corpus held in another state, which is a very different undertaking than an attempt to tax the undistributed income of a non-North Carolina trust that is held for the benefit of a **148 North Carolina resident.[2] The same logic renders the Kaestner Trust's reliance upon the decision of the United States Supreme Court in Safe Deposit & Trust Co. of Baltimore v. Commonwealth of Virginia , 280 U.S. 83, 50 S.Ct. 59, 74 L.Ed. 180 (1929), which involved an attempt to tax the corpus, rather than the undistributed income, of a non-jurisdictional trust based upon the existence of a resident beneficiary that the Court rejected on the basis of a pre- Quill method of analysis, unpersuasive. As a result, neither of these cases supports, much less compels, a decision in the Kaestner Trust's favor. Instead, my review of the decisions cited by both parties compels me to conclude that the only way to properly resolve this case involves reliance upon a very fact-specific analysis of the extent, *54 if any, to which the Kaestner Trust "purposefully avail[ed] itself of the benefits of an economic market in the forum State," see Quill , 504 U.S. at 307, 112 S.Ct. at 1910, 119 L.Ed.2d at 103, with this analysis deeming the presence of the beneficiary in North Carolina to be relevant, but not dispositive.
As the Supreme Court explained in Burger King ,
it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contact can defeat personal jurisdiction there.
471 U.S. at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 544 (citations omitted). Although the assets contained in the Kaestner Trust were held in Boston, and the relevant documents were held in New York and although the trustee worked in New York and resided in Connecticut during the tax years at issue in this case, "business [was] transacted ... by mail and wire communications across state lines," including those of North Carolina. See id . at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 544.
**149 Among other things, Ms. Kaestner was known to be a resident of North Carolina at the time that the Kaestner Trust was created for her benefit. In addition, the trustee transmitted information to Ms. Kaestner, provided advice to Ms. Kaestner, and communicated with Ms. Kaestner in other ways with full knowledge of the fact that she resided in North Carolina. The Kaestner Trust could not have successfully carried out these functions in the absence of the benefits that North Carolina provided to Ms. Kaestner during the time that she lived here. As a result, I am unable to conclude, given the applicable standard of review, that the Kaestner Trust lacked sufficient contacts with North Carolina to permit the State to tax the undistributed income held by the Kaestner Trust for Ms. Kaestner's benefit. Therefore, I see no due process violation. As a result, for all of these reasons, I respectfully dissent from my colleagues' decision to affirm the Court of Appeals' decision.

The extent to which the second prong of the due process analysis has been satisfied does not appear to be before us in this case at this time.

Admittedly, this Court has not adopted the Court of Appeals' treatment of Brooke as dispositive in its opinion. Instead, the Court simply cites Brooke for the unexceptionable proposition that "a trust and its beneficiary are legally independent entities." For the reasons set forth in the text of this dissenting opinion, I believe that a proper due process analysis focused upon the activities of the Kaestner Trust in light of Ms. Kaestner's residence suffices to establish sufficient "minimum contacts" to support the Department of Revenue's attempt to tax the undistributed income applicable to Ms. Kaestner.