IN THE SUPREME COURT OF NORTH CAROLINA

No. 5A16

Filed 21 December 2016

MIDREX TECHNOLOGIES, INC.

v.

N.C. DEPARTMENT OF REVENUE

Appeal pursuant to N.C.G.S. §§ 7A-27(a) and 7A-45.4 from an Opinion and Order on Petition for Judicial Review entered on 21 October 2015 by Judge Gregory P. McGuire, Special Superior Court Judge for Complex Business Cases appointed by the Chief Justice pursuant to N.C.G.S. § 7A-45.4, in Superior Court, Wake County, upholding a Final Decision and Order Granting Respondent's Motion for Summary Judgment entered by Administrative Law Judge Craig Croom on 13 October 2014. Heard in the Supreme Court on 30 August 2016.

> *Robinson, Bradshaw & Hinson, P.A., by Thomas Holderness, for petitioner-appellant.*

> *Roy Cooper, Attorney General, by Tenisha S. Jacobs, Special Deputy Attorney General, for respondent-appellee North Carolina Department of Revenue.*

ERVIN, Justice.

The issue in this case is whether petitioner Midrex Technologies, Inc. (Midrex) is entitled to utilize the single-factor tax allocation formula authorized by N.C.G.S. § 105-130.4(r) and made available to exempt corporations "engaged in business as a building or construction contractor" by N.C.G.S. § 105-130.4(a)(4). For the reasons set forth below, we affirm the trial court's decision to uphold the administrative law

judge's determination that Midrex was not an "excluded corporation" for purposes of N.C.G.S. § 105-130.4(a)(4) during the relevant time period.

Midrex, a Delaware corporation headquartered in Charlotte, was formed to develop and market the Midrex Direct Reduction Process. The Midrex Process, which has been patented by Midrex and is forty years old, is used in a facility known as a Midrex Plant to convert iron ore into direct reduced iron (DRI), a premium iron ore that is, in turn, used as an alternative feed in connection with the production of steel. Although Midrex engages in three primary business activities, Engineering Services and Procurement Services, Midrex Plant Sales, and After Market Sales, the ultimate focus of its business is the sale of Midrex Plants.

Engineering and Procurement Services employees design Midrex Plants, with their work including, but not limited to:

> 1. Designing refractory linings for gas based equipment, furnaces, ductwork, and heating exchange equipment;
>
> 2. Designing gas based equipment, furnaces, ductwork, and heating exchange equipment; and
>
> 3. Designing systems and equipment associated with the design and construction of DRI plants and new technology.

Engineering and Procurement Services houses employees who work in various engineering disciplines, such as mechanical, civil, process, and electrical engineering. Engineering and Procurement Services also houses employees responsible for obtaining proprietary and non-proprietary equipment needed for a Midrex Plant.

Finally, Engineering and Procurement Services houses a site manager and a construction manager,[1] with the site manager being responsible for handling the relationship between Midrex and the purchaser of a Midrex Plant, including keeping the client apprised of any ongoing plant-related issues, helping coordinate activities at the plant site, recommending any necessary corrective measures, communicating with persons involved in the construction process, and providing advice and assistance relating to any issues that might arise during the construction of a Midrex Plant and with the construction manager being responsible for all activities involved in the construction of both foreign and domestic plants.

The terms and conditions under which Midrex designs and sells a Midrex Plant are set out in certain contracts that are entered into between Midrex and the client. The plant sale contracts that Midrex enters into with its clients outline the relevant technical specifications, the terms under which the client makes payment to Midrex, and the nature and extent of the work to be performed by the client and by Midrex. The work that Midrex is required to perform under these plant sale contracts does not include the construction, erection, and installation of the systems and components utilized in a Midrex plant, with the client or some other entity being required to hire construction contractors and laborers in order to ensure the performance of those tasks. Consistent with this understanding of the contractual relationship between

---

[1] At the time that this case was heard before the administrative law judge, Construction Manager was also its Site Manager.

Midrex and its client, Midrex is required to provide engineering, equipment procurement, and advisory and field services needed in connection with the construction of a Midrex Plant, with these contractually required field services including:

> 1.     Interpreting and explaining of plans, materials, and other technical data;
>
> 2.     Advising the Client in developing and updating a construction schedule;
>
> 3.     Inspecting material, equipment, and workmanship;
>
> 4.     Providing advice related to the commissioning of a Midrex Plant.

Although Midrex field service employees do, on occasion, provide hands-on assistance to clients, the performance of this work does not change the fact that, under Midrex's plant sales contracts, the client retains ultimate responsibility for directly supervising and obtaining the performance of all on-site construction work in accordance with the relevant plans and specifications.

Finally, After Market Sales is responsible for addressing issues that arise following the construction of a Midrex Plant. For example, After Market Sales employees are involved in providing additional equipment and parts needed to permit the continued operation of an existing Midrex plant after construction has been completed.

In the years between 2005 and 2008, Midrex entered into contracts with various clients at different locations around the world for the sale of Midrex Plants.

As a result, Midrex filed North Carolina C Corporation Tax Returns with the Department of Revenue that apportioned its income using the standard three-factor formula provided for in N.C.G.S. § 105-130.4(i).[2] Subsequently, Midrex filed a set of amended returns for the relevant period in which it calculated its tax liability using the single-factor formula applicable to "excluded corporations" authorized by N.C.G.S. § 150-130.4(r), with Midrex's claim to be an "excluded corporation" resting on a contention that it was "engaged in business as a building or construction contractor." N.C.G.S. §105-130.4(a)(4) (2016). In these amended returns, Midrex sought a $3,303,703 refund.

Midrex admitted that, during the relevant period, its "primary business [wa]s selling . . . plants." In all of the tax returns that it filed relating to this period, Midrex assigned itself a North American Industry Classification System (NAICS) code of 541330 based upon a review of the business services that it provides, including the field services upon which its present refund request depends. NAICS code 541330 falls within the engineering, rather than the construction, sector.

---

[2] Initially, Midrex filed tax returns for the 2005, 2006, and 2007 tax years that did not attempt to apportion revenue between North Carolina and other jurisdictions. In 2009 Midrex filed a return for the 2008 tax year utilizing the three-factor apportionment formula and filed amended returns seeking refunds for the 2005, 2006, and 2007 tax years. Subsequently, Midrex filed a second set of amended returns relating to the 2005, 2006, and 2007 tax years in which it sought a further refund based upon use of the single-factor formula. The present case arises from the Department's decision to reject the second set of refund requests relating to the 2005, 2006, and 2007 tax years.

After the filing of Midrex's amended returns, respondent North Carolina Department of Revenue determined that Midrex should not be classified as an "excluded corporation" on the grounds that it "was not engaged in business as a building or construction contractor." Referencing the *Franchise Tax, Corporate Income Tax, Privilege Tax, Insurance Premium Tax [and] Excise Tax Rules and Bulletins for Taxable Years 2005 and 2006 and 2007 and 2008*, the Department of Revenue determined that an entity should be treated as an "excluded corporation" depending upon whether it was classified as a "building or construction contractor" on the basis of the NAICS system, which focuses upon whether an entity's primary business activity involves erecting buildings and other structures. As a result of the fact that Midrex was not primarily engaged in the business of constructing buildings or other engineering projects and was, instead, "primarily a technology company that supplies technology relating to the production of DRI" that "is not responsible for the actual construction or installation of the purchased technology," the Department of Revenue determined that Midrex "was not engaged in business as a building or construction contractor" and rejected Midrex's refund request.

On 25 October 2013, Midrex filed a Petition for a Contested Tax Case Hearing with the Office of Administrative Hearings in which it sought to have the denial of its refund request by the Department of Revenue overturned. On 12 June 2014 and 27 June 2014, respectively, Midrex and the Department of Revenue filed motions seeking entry of summary judgment in their favor. On 10 October 2014, the

administrative law judge entered a Final Decision and Order Granting Respondent's Motion for Summary Judgment in which he determined that there was no genuine issue of material fact, that judgment should be entered in favor of the Department of Revenue, and that Midrex's refund request should be denied.

On 23 October 2014, Midrex filed a Petition for Judicial Review in the Superior Court, Wake County. After this case was designated a mandatory complex business case as defined by N.C.G.S. § 7A-45.4 and assigned to a trial judge for decision, the Department of Revenue filed a response to Midrex's petition. On 21 October 2015, the trial court entered an Opinion and Order on Petition for Judicial Review determining that "Midrex was not an excluded corporation during the tax years at issue" and affirming "the Final Decision entered in this matter on October 10, 2014," denying Midrex's summary judgment motion, and granting the Department of Revenue's summary judgment motion.

Although Midrex acknowledged that no disputed issues of material fact existed in this case, it argued before the trial court that the administrative law judge had failed to properly apply the statutory provisions set out in N.C.G.S. § 105-130.4(a)(4) to the facts established by the present record. More specifically, Midrex asserted that the administrative law judge had erred by concluding that Midrex was not a "building or construction contractor" or "engaged in [the construction] business" and by construing the relevant statutory language to require a showing that construction-related activities constituted Midrex's "primary" business activity as a prerequisite

for a finding that Midrex was an "excluded corporation." In reaching a contrary conclusion, the trial court began by attempting to determine the plain meaning of "building or construction contractor" for purposes of N.C.G.S. § 105-130.4(a)(4) and reasoning that "only if Midrex's work qualifies as building or construction contracting will [this] Court need to address the meaning of the statutory term 'engaged in business.'" *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, No. 14 CVS 13996, slip op. at 13 (N.C. Super. Ct. Wake County Oct. 21, 2015) (unpublished). Although Midrex asserted that the field service work that it performed under its Plant sale contracts constituted construction management and that it was involved in "construction contracting" for that reason, the Department of Revenue asserted that Midrex was "not a building or construction contractor" because "Midrex's contracts do not place responsibility on Midrex to build or erect the plant" and because "Midrex is not significantly involved in the physical labor of building the plant." *Id.*

After concluding that a determination of the extent to which Midrex was properly classified as an "excluded corporation" involved an issue of statutory construction requiring an analysis of the plain meaning of the relevant statutory language and, potentially, the utilization of various principles of statutory construction, *Midrex*, slip op. at 10-13 (citing *inter alia, Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d, 513, 517 (2001)), the trial court noted that "Merriam-Webster defines 'building' as 'the art or business of assembling materials into a structure,'" defines "'construction' as 'the process, art, or manner or constructing

something,' " and defines "contractor as 'one that contracts or is a party to a contract: as (a) one that contracts to perform work or provide supplies[; or] (b) one that contracts to erect buildings.' " *Id.* at 15 (brackets in original). In addition, the trial court sought guidance from language appearing in other relevant statutory provisions, noting that the "statutory definition [of "construction contractor" contained in N.C.G.S. § 105-273(5a)] is consistent with the dictionary definitions and emphasizes the physical work of 'building' and 'installing' as the critical elements of construction contracting, and does not suggest that it excludes subcontractors or other contractors." *Id.* According to the trial court, the dictionary and statutory definitions of the relevant terms "accurately reflect the common understanding [of the terms], as they include a broader range of activity." *Id.* at 16.

Although Midrex argued that NAICS treats construction managers providing scheduling and oversight services as contractors, the trial court pointed out that "NAICS recognizes that where an establishment's primary business is providing oversight and scheduling for construction projects it may properly be classified for purposes of the NAICS system as a 'general contractor-type establishment' " and indicated that the quoted language "does not suggest that any establishment which performs any amount of construction oversight and scheduling as some part of its services is a 'building or construction contractor.' " *Id.* As a result, the trial court concluded that the term "building or construction contractor" as used in N.C.G.S. § 105-130.4(a)(4) did not apply to the provision of "construction management that

involves only oversight or scheduling, but does not include responsibility for performance or direction of the actual building, erection, or assembly of a structure;" therefore, Midrex construction management activities "do[ ] not fit within the plain meaning of the term 'building or construction contractor' as used in [N.C.] G.S. § 105-130.4(a)(4). " *Id*. at 18.

Although the agreements between Midrex and its clients obligated Midrex to provide technical advice, including "interpreting and explaining drawings and specifications," "advising the client in development of the construction sequence," and "inspecting the material, equipment, and workmanship of the plant," and to "direct and supervise the commissioning (start-up) of the Midrex Plant once it was constructed," these contracts clearly made the client responsible for procuring the performance of the actual erection of the plant. *Id*. at 18-19. In light of these contractual provisions, the trial court determined that the fact that Midrex performed field advisory services for its clients did not render Midrex a "building or construction contractor" for purposes of N.C.G.S. § 105-130.4(a)(4). *Id*. at 19. Having made that determination, the trial court deemed it "unnecessary . . . to address the parties' arguments regarding the meaning of the term 'engaged in business,' " and affirmed the administrative law judge's order. *Id*. at 19-20. Midrex noted an appeal to this Court from the trial court's order.

As we have already noted, the issue before the trial court in this case was whether the administrative law judge properly granted summary judgment in favor

of the Department of Revenue and against Midrex. Subsection 150B-51(d) of our General Statutes provides that "[i]n reviewing a final decision allowing judgment on the pleadings or summary judgment, the court may enter any order allowed by G.S. 1A-1, Rule 12(c) or Rule 56," with the reviewing court having the authority to "remand the case to the administrative law judge for such further proceedings as are just" in the event that "the order of the court does not fully adjudicate the case." N.C.G.S. § 150B-51(d) (2015). Similarly, in reviewing an order from a superior court acting in an appellate capacity, an appellate court must "determine whether the trial court exercised the appropriate scope of review and, if appropriate[,] . . . decide whether the court did so properly." *In re Denial of NC IDEA's Refund*, 196 N.C. App. 426, 434, 675 S.E.2d 88, 95 (2009) (quoting *County of Wake v. N.C. Dep't of Env't & Nat. Res.*, 155 N.C. App. 225, 233-34, 573 S.E. 2d 572, 579 (2002), *disc. rev. denied*, 357 N.C. 62, 579 S.E.2d 386-87 (2003)).

According to well-established North Carolina law, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2015). Appeals arising from summary judgment orders are decided using a de novo standard of review. *Dallaire v. Bank of Am.*, 367 N.C. 363, 367, 760 S.E.2d 263, 266 (2014) (citation omitted). "Under the *de novo* standard of review, the [Court] 'consider[s] the matter anew[ ] and freely

substitute[es] its own judgment for' [that of the lower court]." *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004) (quoting *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13-14, 565 S.E.2d 9, 17 (2002) (second, third, and fourth alterations in original)). As a result, our task on appeal from the trial court's order is to make a de novo determination of whether the administrative law judge correctly granted summary judgment in favor of the Department of Revenue and against Midrex.

C corporations like Midrex doing business within North Carolina are subject to various forms of taxation "to raise and provide revenue" for the State. *See* N.C.G.S. § 105-1 (2015). A corporation's franchise tax obligation is computed based upon the "total amount of [the corporation's] issued and outstanding capital stock, surplus, and undivided profits," *id.* § 105-122(b) (2016), while a C corporation's income tax liability is imposed upon the corporation's "net income." *Id.* § 105-130.3 (2015). As a result of the fact that a corporation may earn income both inside and outside of North Carolina and the fact that there are limitations on the extent to which North Carolina has the constitutional authority to tax income earned outside North Carolina, a corporation that does business both inside and outside North Carolina must use the allocation and apportionment process delineated in N.C.G.S. §§ 105-122(c1)(1) and 105-130.4 in order to determine its liability for the payment of North Carolina franchise and income taxes.

According to the statutory provisions governing the allocation and apportionment process during the relevant time period, corporations other than those defined as "excluded corporations" in N.C.G.S. § 105-130.4(a)(4) are required to utilize a three-factor apportionment formula that focuses upon property, payroll, and sales in order to determine their North Carolina franchise and income tax liability, *id*. §§ 105-122(c1)(1), 130-4(i) (2015),while "excluded corporations" are entitled to utilize a single-factor formula that focuses exclusively upon sales. *Id*. § 105-130.4(r) (2015). Thus, the extent to which Midrex is entitled to utilize the single-factor formula in lieu of the three-factor formula depends entirely upon whether it is properly categorized as an "excluded corporation."

An "excluded corporation" is defined as "any corporation *engaged in business as a building or construction contractor*, a securities dealer, or a loan company or a corporation that receives more than fifty percent (50%) of its ordinary gross income from intangible property." *Id*. § 105-130.4(a)(4) (emphasis added). In view of the fact that there is no definition of "building or construction contractor" in the relevant statutory provisions, we are required, as a first step, to determine the meaning of that statutory phrase in order to ascertain whether Midrex should be deemed an "excluded corporation" entitled to utilize the single-factor formula for the purpose of determining its franchise and income tax liability.

"Legislative intent controls the meaning of a statute." *Brown v. Flowe*, 349

N.C. 520, 522, 507 S.E.2d 894, 895 (1998) (quoting *Shelton v. Morehead Mem'l Hosp.,*

318 N.C. 76, 81, 347 S.E.2d 824, 828 (1986)).

> The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, 'the spirit of the act and what the act seeks to accomplish.' If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so.

*Lenox, Inc. v. Tolson,* 353 N.C. at 664, 548 S.E.2d at 517 (citations omitted). Courts

should "give effect to the words actually used in a statute" and should neither "delete

words used" nor "insert words not used" in the relevant statutory language during

the statutory construction process. *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d

297, 301 (2014) (citations omitted). "[U]ndefined words are accorded their plain

meaning so long as it is reasonable to do so." *Polaroid Corp. v. Offerman*, 349 N.C.

290, 297, 507 S.E.2d 284, 290 (1998), *cert. denied*, 526 U.S. 1098 (1999), *disavowed in*

*part by Lenox,* 353 N.C. at 663, 548 S.E.2d at 517. In determining the plain meaning

of undefined terms, "this Court has used 'standard, nonlegal dictionaries' as a guide."

*C.D. Spangler Constr. Co. v. Indus. Crankshift & Eng'g Co.*, 326 N.C. 133, 152, 388

S.E.2d 557, 568 (1990) (quoting *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.,*

266 N.C. 430, 438, 146 S.E.2d 410, 416 (1966)). Finally, statutes should be construed

so that the resulting construction "harmonizes with the underlying reason and

purpose of the statute." *Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651,

656, 403 S.E.2d 291, 294 (1991) (citations omitted).

According to the *New Oxford American Dictionary*, "building" means "the process or business of constructing something," such as "the building of highways"; "construction" means "the building of something, typically a large structure"; and "contractor" means "a person or company that undertakes a contract to provide materials or labor to perform a service or do a job." *New Oxford American Dictionary* 228, 373, 377 (Angus Stevenson & Christine A. Lindberg eds. 3d ed. 2010). As the administrative law judge and the trial court reasoned, these definitions tend to focus upon the act of physically constructing or erecting a structure or improvement to real property. Thus, the validity of Midrex's claim to be a "building or construction contractor" depends upon the extent to which the work performed by Midrex employees involves the act of building or constructing a physical asset, such as a Midrex Plant.

An examination of the relevant statutory language in wider context reinforces this conclusion. As the relevant statutory provisions clearly indicate, the single-factor formula and three-factor formula are utilized to determine the affected entity's entire North Carolina tax liability. In other words, an "excluded" corporation is treated for tax allocation and apportionment purposes as if it was involved in nothing other than the activity that caused it to be classified as "excluded." In light of that fact, we have difficulty in seeing why the General Assembly would have intended for N.C.G.S. § 105-130.4(a)(4) to have been construed in such a manner as to classify an entity engaged in only a relatively small amount of construction-related activity as if

it was a "building or construction contractor." Instead, it is far more likely, given that a taxpayer is treated as "excluded" or not "excluded" on a whole entity basis, that N.C.G.S. § 105-130.4(a)(4) should be understood as describing the entire entity rather than a small portion of the entity's overall business.

The interpretation of the relevant statutory language that we believe to be appropriate is further buttressed by the fact that the Department of Revenue has traditionally read N.C.G.S. § 105-130.4(a)(4) in just this way. In an attempt to provide guidance to taxpayers and others attempting to ensure compliance with North Carolina's revenue laws, the Secretary of Revenue publishes Bulletins that set out his or her interpretation of various statutory provisions.

> It is the duty of the Secretary [of Revenue] to interpret all laws administered by the Secretary. The Secretary's interpretation of these laws shall be consistent with the applicable rules. An interpretation by the Secretary is prima facie correct. When the Secretary interprets a law by adopting a rule or publishing a bulletin or directive on the law, the interpretation is a protection to the officers and taxpayers affected by the interpretation, and taxpayers are entitled to rely upon the interpretation.

N.C.G.S. § 105-264(a) (2016). "The construction adopted by the administrators who execute and administer a law in question is one consideration where an issue of statutory construction arises," *Polaroid*, 349 N.C. at 301-02, 507 S.E.2d at 293 (quoting *John R. Sexton & Co. v. Justus*, 342 N.C. 374, 380, 464 S.E.2d 268, 271 (1995)), because such interpretation is " 'strongly persuasive' " and "entitled to due consideration," *id.* at 302, 507 S.E.2d at 293 (quoting and citing *Shealy v. Associated*

*Transp., Inc.*, 252 N.C. 738, 742, 114 S.E.2d 702, 705 (1960)). *Contra Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjustment*, 365 N.C. 152, 156, 712 S.E.2d 868, 871 (2011) (stating "courts consider, but are not bound by, the interpretations of administrative agencies and boards"). Thus, the manner in which the Secretary of Revenue has interpreted the relevant statutory language is important and must be given "due consideration."

The relevant Bulletin language clearly states that a "building or construction contractor," as that term is used in N.C.G.S. 105-130.4(a)(4), "is a business so classified in the [NAICS] published by the Federal Office of Management and Budget." Corp., Excise & Insur. Tax Div., N.C. Dep't of Revenue, *Franchise Tax[,] Corporate Income Tax[,] Privilege Tax[,] Insurance Premium Tax[,] Excise Tax: Rules and Bulletins: Taxable Years 2005 & 2006*, at 46; *id., Years 2007 & 2008*, at 54-55. NAICS classifies establishments as belonging to particular industries based on the nature of the entity's primary business activity. According to NAICS, the construction sector is comprised of establishments that are *primarily* engaged in the construction of buildings or engineering projects, including erecting buildings and other structures, heavy construction, alterations, reconstruction, and installation. Thus, under the interpretation of N.C.G.S. § 105-130.4(a)(4) deemed appropriate by the Secretary of Revenue, an entity is not a "building or construction contractor" unless that entity is primarily engaged in the actual construction or erection of physical assets.

A careful review of the undisputed evidence contained the evidentiary record presented for the administrative law judge's consideration indicates that Midrex has only limited involvement in the actual, physical construction of a Midrex Plant. Instead, the undisputed record evidence tends to show that the client, rather than Midrex, has ultimate responsibility for obtaining the physical construction of a Midrex Plant, with Midrex being responsible for providing scheduling, oversight, and other sorts of technical assistance and advice. For that reason, we agree with the trial court and the administrative law judge that Midrex is not a "building or construction contractor" for purposes of N.C.G.S. § 105-130.4(a)(4). Our determination to this effect is buttressed by the fact that the undisputed record evidence reflects that Midrex has classified itself as an engineering company rather than a building or construction company for purposes of the NAICS system. In view of the fact that an entity is not entitled to classify itself as a construction company utilizing NAICS unless it is primarily engaged in activities involved the building or erection of structures, the fact that Midrex concedes that it is not primarily engaged in such activities, and the fact that Midrex has assigned an engineering-related NAICS code rather than a construction-related NAICS code, it is clear that Midrex is not entitled to claim "building or construction contractor" status for purposes of N.C.G.S. § 105-130.4(a)(4) utilizing the test for identifying "excluded corporations" that the Department of Revenue has deemed appropriate either. As a result, when considering the record evidence concerning Midrex's role in the construction of a

Midrex Plant on the basis of either the literal language of N.C.G.S. § 105-130.4(a)(4) or the method for identifying "excluded corporations" deemed appropriate by the Secretary, we agree that the Department of Revenue correctly rejected Midrex's refund request.

In seeking to persuade us that it should be treated as a "building or construction contractor" for purposes of N.C.G.S. § 105-130.4(a)(4), Midrex emphasizes that it provides construction management services and performs hands-on construction activities. Although the record does contain evidence tending to show that Midrex employees engage in construction management activities and perform a limited amount of hands-on construction activity, this evidence is not enough to support a decision to classify Midrex as an "excluded corporation" on the grounds that it is a "building or construction contractor."

As Midrex notes, construction management activities are included within the NAICS construction classification. In light of that fact, Midrex argues that it should be deemed a construction company for NAICS-related purposes given that it performs what amounts to construction management services for its clients and that it should be deemed to be a "building or construction contractor" for that reason. Midrex's argument to this effect fails, however, because an NAICS classification determination is supposed to be premised upon the identification of an entity's primary business activity. Although the record does contain evidence tending to show that Midrex performs a certain amount of construction management work, the record does not

provide any support for an assertion that the provision of such services constitutes Midrex's primary business activity. For that reason, Midrex could not properly be classified as a construction manager for purposes of the NAICS classification system given that construction management was not its primary line of business during the relevant time period. As a result, the fact that Midrex performs a certain amount of construction management work does not justify a decision in Midrex's favor in this case.

Similarly, while Midrex employees do, apparently, perform a very limited amount of hands-on construction, such work is not provided for in the Plant construction contracts, appears to involve an attempt on the part of Midrex's employees to demonstrate to the employees of other entities employed by the client for the purpose of physically constructing a Midrex Plant how certain jobs should be performed, and seems to represent a very small fraction of the work that Midrex performs for its clients in connection with the design, construction, and commissioning of a Midrex Plant. In other words, the hands-on construction work that is performed by Midrex's employees appears to be incidental to the obligations imposed upon it under the contracts that are intended to result in the construction of a Midrex Plant. Thus, Midrex cannot be treated as a "building or construction contractor" for purposes of N.C.G.S. § 105-130.4(a)(4) based on its hands-on construction activities either.

In an attempt to persuade us of the correctness of its position, Midrex argues that, because N.C.G.S. § 105-130.4 is a tax statute, it should be construed in favor of Midrex as the taxpayer. *See Lenox,* 353 N.C. at 664, 548 S.E.2d at 517 (2001). However, as the Department of Revenue notes, this Court has held that tax statutes providing for exceptions to otherwise-applicable general rules, such as N.C.G.S. §§ 105-130.4(a)(4) and 105-130.4(r), should be treated as statutes providing for an exemption from taxation that should be construed against the taxpayer. *See Hatteras Yacht Co. v. High*, 265 N.C. 653, 656, 144 S.E.2d 821, 824 (1965) (finding that exemptions from taxation are "to be strictly construed against the claim of such special or preferred treatment"). As the record clearly reflects, the vast majority of C Corporations subject to North Carolina taxation apportioned their income utilizing the three-factor formula specified in N.C.G.S. § 105-130.4(i) during the tax years at issue in this case. For that reason, any claim that a taxpayer has the right to utilize the single-factor formula set out in N.C.G.S. § 105-130.4(r) should be strictly construed against, rather than in favor of, the taxpayer's contention, a proposition that further reinforces our determination that Midrex is not entitled to be treated as an "excluded corporation" as defined in N.C.G.S. § 105-130.4(a)(4).

Reduced to its essence, the argument that Midrex has advanced in support of its refund request rests on an assertion that entities seeking to be classified as "excluded corporations" based on their status as a "building or construction contractor" are entitled to be categorized in that manner as long so as they are

engaged in any non-incidental amount of "building or construction" work. In other words, acceptance of Midrex's argument hinges on the proposition that the company is not required to be *primarily* "engaged in business as a building or construction contractor." Admittedly, as Midrex notes, the word "primarily" does not appear in the relevant statutory language. *See* N.C.G.S. § 105-130.4(a)(4). The absence of the word "primarily" from N.C.G.S. § 105-130.4(a)(4), while relevant, is not, however, dispositive in light of the rule of statutory construction to the effect that the fact "[t]hat a legislature declined to enact a statute with specific language does not indicate the legislature intended the exact opposite." *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 202, 675 S.E.2d 641, 650 (2009) (citation omitted). Thus, the ultimate issue for our consideration remains what the relevant statutory language, when read in context and in its entirety, should be understood to mean.

As we have already demonstrated, the position espoused by the Department of Revenue and upheld by the administrative law judge and the trial court is fully consistent with both the literal language in which the relevant statutory provision is couched and long-standing administrative practice. Acceptance of the construction of the relevant statutory language contended for by Midrex would have the effect of allowing *any* corporation that performed *some* building or construction work to take advantage of the single-factor formula made available by N.C.G.S. § 105-130.4(r), despite the fact that the General Assembly clearly intended that the single-factor formula was only to be made available to a limited class of corporate taxpayers, with

the remaining corporate taxpayers being required to use the three-factor formula.[3] Any decision that would have the effect of vastly expanding the number of entities entitled to use the single-factor test would appear to conflict with the apparent legislative intent. *See Elec. Supply Co.*, 328 N.C. at 656, 403 S.E.2d at 294 ("In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent is accomplished"). As a result, adoption of the construction of the relevant statutory language contended for by Midrex would appear to be inappropriate for this reason as well.

Thus, for the reasons set forth above, we conclude that the administrative law judge and the trial court properly determined that Midrex was not a "building or construction contractor" for purposes of N.C.G.S. § 105-130.4(a)(4). In light of that fact, we need not determine whether Midrex satisfied the "engaged in business" criterion contained in N.C.G.S. § 105-130.4(a)(4) in order to properly resolve this case. Accordingly, we hold that the trial court did not err by concluding that Midrex is not entitled to a franchise and income tax refund based upon the argument that it has advanced before this Court and we thus affirm the trial court's decision.

AFFIRMED.

---

[3] Admittedly, the General Assembly has amended N.C.G.S. § 105-130.4 so as to allow all corporations to utilize the single-factor formula effective for tax years beginning with 1 January 2018. However, Midrex's liability for franchise and income taxation associated with the 2005, 2006, and 2007 tax years must, of course, be determined in light of the statutory provisions in effect as of that time.