IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-202

Filed: 21 April 2020

Warren County, No. 92-CRS-1839-40

STATE OF NORTH CAROLINA

v.

KELVIN ALPHONSO ALEXANDER, Defendant.

Appeal by Defendant from order entered 1 October 2018 by Judge Henry W. Hight, Jr., in Warren County Superior Court. Heard in the Court of Appeals 18 September 2019.

*Attorney General Joshua H. Stein, by Assistant Attorney General Kristin J. Uicker, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Anne M. Gomez and Nicholas C. Woomer-Deters, for the Defendant.*

DILLON, Judge.

Defendant Kelvin Alphonso Alexander appeals an order denying his post-conviction motion to test DNA evidence and fingerprints in relation to a murder he pleaded guilty to almost three decades ago in 1993.

I. Background

Early one morning in September 1992, two men robbed a gas station in Norlina. During the robbery, one of the men shot and killed the gas station attendant.

A witness told police that she saw the two men fleeing the scene and that one of the men was Defendant, someone she had been acquainted with most of her life.

In October 1992, Defendant was indicted for first-degree murder and armed robbery in connection with the incident. Defendant pleaded guilty to second-degree murder, and the State dismissed the robbery charge as part of a plea deal.

In March 2016, Defendant filed a motion to test the DNA and fingerprints on the shell casings/projectile found at the gas station after the killing. He alleged in his motion that in 2004 an informant who was pleading guilty to an unrelated federal crime told authorities that a Mr. Terry had admitted to him to the 1992 Norlina murder/robbery shortly after it had occurred. Further, Defendant alleged that the informant helped Mr. Terry retrieve the murder weapon from some woods near the gas station. However, the record reflects that Mr. Terry testified at a hearing that he was not involved in the incident, that he never confessed to the informant or anyone else to the Norlina murder/robbery, and that he did not even know Defendant.

The trial court denied Defendant's motion for post-conviction, DNA testing. Defendant appealed.

## II. Analysis

There are essentially two issues before us. First, may a defendant who has pleaded guilty seek post-conviction DNA testing under N.C. Gen. Stat. § 15A-269

(2015)?  Second, if so, has Defendant here met his burden of showing that the results of such testing would be material to his defense?

A. Availability of Post-Conviction Testing Following a Guilty Plea

The State argues that, even if the results of any testing would prove material to show Defendant's innocence, Defendant is not entitled to seek testing under Section 15A-269 because he pleaded guilty to the murder.  Indeed, the Section states that a defendant must show that testing would be "material to the defendant's *defense*," N.C. Gen. Stat. § 15A-269(a)(1) (emphasis added), and that testing is warranted only if "there exists a reasonable probability that *the verdict* would have been more favorable to the defendant" had the requested DNA been tested earlier. N.C. Gen. Stat. § 15A-269(b)(2) (emphasis added).  The State argues in its brief that "[t]he plain meaning of 'defense' and 'verdict' [in Section 15A-269] presupposes the existence of a trial and a determination of guilt based on evidence presented to the fact finder," and that a defendant who pleads guilty has put up no defense and results in a conviction without a verdict.

Based on controlling precedent, we conclude that Defendant is not disqualified from seeking post-conviction DNA testing merely for having pleaded guilty. Specifically, in June 2018, our Court held that a defendant was not automatically barred from seeking post-conviction DNA testing merely because he entered a plea of guilty. *State v. Randall*, 259 N.C. App. 885, 887, 817 S.E.2d 219, 221 (2018).  In

reaching this conclusion, the *Randall* panel relied on language from an opinion by our Supreme Court that " '[i]f the DNA testing being requested had been conducted on the evidence, there exists a reasonable probability that the verdict would have been more favorable to the defendant.' " *Id.* at 887, 817 S.E.2d at 220 (quoting *State v. Lane*, 370 N.C. 508, 518, 809 S.E.2d 568, 575 (2018)). The *Randall* panel then reasoned that there may be rare situations where there is a reasonable probability that a defendant would not have pleaded guilty in the first instance and would have not otherwise been convicted had he had the results of DNA testing when faced with the charges. *See id.* at 887, 817 S.E.2d at 221.

For example, suppose that an innocent person is charged with a murder based on the statements of several (mistaken) eyewitnesses. It may be that this innocent defendant will plead guilty to second-degree murder rather than risk being found guilty of first-degree murder and sentenced to death. However, suppose further that certain DNA found at the scene conclusively belonged to the actual killer. In that situation, there is a reasonable probability that the outcome would have been different had the results of DNA testing been available to the innocent defendant before he decided to plead guilty. There is a reasonable probability that he would have pleaded not guilty and that the DNA would point to someone who merely looked like him, leading to his acquittal or to the charges being dropped.

We recognize the argument that the word "verdict" appearing in Section 15A-269 suggests that our General Assembly intended for post-conviction, DNA testing to be available *only where* there has been an actual *verdict* rendered. And there is no verdict in a matter where a defendant has pleaded guilty. But there is a strong counter-argument that the General Assembly did not intend for the word "verdict" to be construed in such a strict, legal sense. Rather, the General Assembly intended for "verdict" to be construed more broadly, to mean "resolution," "judgment" or "outcome" in a particular matter. To read "verdict" in a strict, legal sense would lead to an absurd result, clearly not intended by the General Assembly. That is, any defendant who pleads "not guilty" but convicted by a *judge* after a *bench* trial would not be eligible to seek post-conviction DNA testing if a strict interpretation of "verdict" is applied: only *juries* (and not judges) render verdicts in a strict, legal sense.[1]

---

[1] Our Supreme Court has defined "verdict" as "the unanimous decision made *by the jury* and reported to the court." *State v. Hemphill*, 273 N.C. 388, 389, 160 S.E.2d 53, 55 (1968) (emphasis added). Our Rules of Civil Procedure describe the decisions of juries as "verdicts," *see* N.C. Gen. Stat. § 1A-1, Rule 49 (2015), and decisions by judges in bench trials as "findings" by the court. *See* N.C. Gen. Stat. § 1A-1, Rule 52. Black's Law Dictionary recognizes that the technical definition of "verdict" is a decision rendered by a jury, and not a judge:

> The formal and unanimous decision or finding of a jury . . . . The word "verdict" has a well-defined signification in law. It is the decision of the jury, and it never means the decision of a court or a referee or a commissioner [though] in common language, the word "verdict" is sometimes used in a more extended sense, but in law it is always used to mean the decision of a jury.

*Verdict*, Black's Law Dictionary (7th ed. 1999).

We note that a few months after our Court decided *Randall*, our Supreme Court in September 2018 affirmed, *per curiam* without any explanation, an unpublished opinion of our Court in which we suggested that post-conviction DNA testing was *not* available to defendants who had pleaded guilty. *State v. Sayre*, 255 N.C. App. 215, 803 S.E.2d 699, 2017 N.C. App. LEXIS 696 (2017) (unpublished), *aff'd per curiam*, 371 N.C. 468, 818 S.E.2d 101 (2018).

Specifically, in that case, we held that a defendant was not entitled to post-conviction DNA testing because (1) the defendant failed to show how testing would be material to show that he was not the perpetrator and (2) "by entering into a plea agreement with the State and pleading guilty, defendant presented no 'defense' pursuant to N.C. Gen. Stat. § 15A-269(a)(1)." *Id.* at *5. However, only the first issue was before the Supreme Court on appeal, as that issue was the only basis for the dissent from our Court, and the defendant did not seek review of the second issue. *See id.* at *6 (Murphy, J., dissenting); *see also* N.C. R. App. P. 16(b); *see also Clifford v. River Bend Plantation, Inc.*, 312 N.C. 460, 463, 323 S.E.2d 23, 25 (1984) ("When an appeal is taken pursuant to [N.C. Gen. Stat. § 7A-30(2)], the only issues properly before the Court are those on which the dissenting judge in the Court of Appeals based his dissent."). Therefore, the Supreme Court's *per curiam* affirmance was only on this first issue, that the defendant failed to show that testing would be material in that case.

B. Materiality

Section 15A-269 permits a defendant to obtain post-conviction DNA testing if he meets his burden of showing that the results of such testing, among other things, would be "material" to his defense. N.C. Gen. Stat. § 15A-269.

Our Supreme Court has held that "[a] trial court's determination of whether defendant's request for postconviction DNA testing is 'material' to his defense, as defined in N.C.G.S. § 15A-269(b)(2), is a conclusion of law, and thus we review *de novo* the trial court's conclusion that defendant failed to show the materiality of his request." *State v. Lane*, 370 N.C. 508, 517-18, 809 S.E.2d 568, 574 (2018).

Further, whether evidence is "material" to a defendant's defense is determined by whether "there exists a reasonable probability that the verdict would have been more favorable to the defendant." *Id.* at 519, 809 S.E.2d at 575. It is the defendant's burden, though, to show such materiality is present. *Id.* at 518, 809 S.E.2d at 574.

Here, Defendant contends that the requested DNA and fingerprint testing is material because the evidence "would exculpate [Defendant] by corroborating [the informant's] testimony" about Mr. Terry's involvement in the murder/robbery. We note, however, there was substantial evidence of Defendant's guilt, including (1) the eyewitness who saw Defendant fleeing the scene; (2) Defendant's admission that he was at the scene during the investigation of the crime; and (3) Defendant's admission, through his guilty plea, that he, in fact, committed the crime.

We conclude that Defendant has failed to show how it is reasonably probable that he would not been convicted of at least second-degree murder based on the results of the DNA and fingerprint testing. That is, the presence of another's DNA or fingerprints on this or other evidence would not necessarily exclude Defendant's involvement in the crime. The presence of another's DNA or fingerprints could be explained by the possibility that someone else handled the casings/projectile prior to the crime or that the DNA or fingerprints are from Defendant's accomplice, as there were two involved in the murder. Our jurisprudence sets a high bar to establish materiality in such cases, especially for those who have pleaded guilty. *See State v. Tilghman*, ___ N.C. App. ___, ___, 821 S.E.2d 253, 256 (2018) (stating that "a guilty plea increases a defendant's burden to show materiality"). Thus, we conclude that Defendant has failed to meet his burden of showing materiality.[2]

## III. Conclusion

Defendant has failed to demonstrate that the evidence he seeks to have tested is material to his defense. As such, we affirm the trial court's denial of his motion.

AFFIRMED.

Judge BROOK concurs.

Judge BERGER concurs by separate opinion.

---

[2] We note the State's argument that the issue regarding the testing of the fingerprints is not before us on appeal, contending that the trial court only ruled on the DNA evidence, and not the fingerprint evidence. However, the record shows that in his motion, Defendant sought testing for both and that in its order, the trial court denied Defendant's motion, without any limiting language.

BERGER, Judge, concurring in separate opinion.

I concur only in the result reached by the majority. I write separately because a defendant who pleads guilty is not entitled to post-conviction DNA testing. *See State v. Sayre*, No. COA17-68, 2017 WL 3480951 (N.C. Ct. App. Aug 15, 2017), *aff'd per curiam*, 371 N.C. 468, 818 S.E.2d 101 (2018).

On November 16, 1993, Defendant pleaded guilty to second degree murder. Defendant signed a standard Transcript of Plea, in which he acknowledged that he was "in fact guilty" of murdering Carl Eugene Boyd. Following a colloquy with the trial court, Defendant's plea was accepted upon findings that there was a factual basis for Defendant's plea of guilty and that the plea was entered freely, voluntarily, and understandingly by Defendant.

A defendant may make a motion for post-conviction DNA testing if the biological evidence

> (1) Is material to the defendant's defense.
> (2) Is related to the investigation or prosecution that resulted in the judgment.
> (3) Meets either of the following conditions:
>     a. It was not DNA tested previously.
>     b. It was tested previously, but the requested DNA test would provide results that are significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results.

N.C. Gen. Stat. § 15A-269(a) (2019). A trial court shall grant a defendant's motion

for post-conviction DNA testing if

> (1)    The conditions set forth in subdivisions (1), (2), and (3) of subsection (a) of this section have been met;
> (2)    If the DNA testing being requested had been conducted on the evidence, there exists a reasonable probability that the verdict would have been more favorable to the defendant; and
> (3)    The defendant has signed a sworn affidavit of innocence.

N.C. Gen. Stat. § 15A-269(b).

A defendant who has pleaded guilty cannot establish that post-conviction DNA

testing would be material to his defense as required by N.C. Gen. Stat. § 15A-

269(a)(1). This Court has previously determined that "by entering into a plea

agreement with the State and pleading guilty, defendant presented no 'defense'

pursuant to N.C. Gen. Stat. § 15A-269(a)(1)." *Sayre*, 2017 WL 3480951, at *2.

The majority contends that our Supreme Court affirmed only that portion of

*Sayre* addressing appointment of counsel. According to the majority, the affirmance

by our Supreme Court did not address the issue of guilty pleas under Section 15A-

269, and, therefore, is not binding on this Court.

It is correct that review by our Supreme Court is generally limited to the issue

or issues "specifically set out in the dissenting opinion as the basis for that dissent."

N.C. R. App. 16(b) (2019). In *Sayre*, Judge Murphy states that he dissents from the

majority opinion because the defendant's allegations of materiality under Section

15A-269 entitled him to appointment of counsel. However, Judge Murphy's dissent correctly addresses the materiality standard under subsection (a)(1). The dissent discusses *State v. Cox*, 245 N.C. App. 307, 781 S.E.2d 865 (2016), in which the defendant argued the trial court erred in denying him counsel pursuant to Section 15A-269(c).

The defendant in *Cox* sought post-conviction DNA testing following his plea of guilty to statutory rape. This Court held that a showing of materiality under subsection (a)(1) was "a condition precedent to the trial court's authority to grant his motion and appoint him counsel." *Cox*, at 312, 781 S.E.2d at 868.

Further, this Court has stated,

> [W]e reject [d]efendant's contention that the threshold materiality requirement for the appointment of counsel for purposes of N.C. Gen. Stat. § 15A-269(c) is less demanding than that required for actually ordering DNA testing pursuant to N.C. Gen. Stat. § 15A-269(a)(1) and hold that, in order to support the appointment of counsel pursuant to N.C. Gen. Stat. § 15A-269(c), a convicted criminal defendant must make an allegation addressing the materiality issue that would, if accepted, satisfy N.C. Gen. Stat. § 15A-269(a)(1).

*State v. Gardner*, 227 N.C. App. 364, 368, 742 S.E.2d 352, 355 (2013) (citation and quotation marks omitted).

Even though Judge Murphy indicated he was dissenting on the issue of appointment of counsel, his reasoning and the law on materiality under subsection (a)(1) are so intertwined that the *per curiam* opinion from our Supreme Court in *Sayre*

can only be read as affirming the entire majority opinion from this Court.[3]  *See*

*Tinajero v. Balfour Beatty Infrastructure, Inc.*, 233 N.C. App. 748, 761, 758 S.E.2d

169, 177-78 (2014) (citation and quotation marks omitted) ("*Per curiam* decisions

stand upon the same footing as those in which fuller citations of authorities are made

and more extended opinions are written.").

Our Supreme Court has stated that a defendant's plea of guilty is a "formal

confession[] of guilt."  *State v. Caldwell*, 269 N.C. 521, 524, 153 S.E.2d 34, 36 (1967).

*See also State v. Elliott*, 269 N.C. 683, 685, 153 S.E.2d 330, 332 (1967) ("Defendant's

plea of guilty in open court is [a] confession[.]").  Further,

> "[a] valid guilty plea . . . serves as an admission of all the
> facts alleged in the indictment or other criminal process."
> *State v. Thompson*, 314 N.C. 618, 623-24, 336 S.E.2d 78, 81
> (1985) (citations omitted). A guilty plea is "[a]n express
> confession" by a defendant who "directly, and in the face of
> the court, admits the truth of the accusation." *State v.
> Branner*, 149 N.C. 559, 561, 63 S.E. 169, 170 (1908).

*State v. Chandler*, ___ N.C. App. ___, ___, 827 S.E.2d 113, 116 (2019).  In addition, it

is well settled that a plea of guilty "leaves open for review only the sufficiency of the

indictment and waives all defenses other than that the indictment charges no

---

[3] This case illustrates at least one of the reasons why *per curiam* decisions can be problematic. Judges and practitioners benefit from certainty and clearly developed jurisprudence.  The issue in this case could have been settled with a full opinion from our Supreme Court in *Sayre*.  However, our case law has developed around *Randall*.  Courts have likely invested unnecessary time, energy, and resources handling motions for post-conviction DNA testing where defendants entered guilty pleas.

offense." *State v. Smith*, 279 N.C. 505, 506, 183 S.E.2d 649, 650 (1971) (citation and quotation marks omitted).

Defendant here did not enter an *Alford* plea. Therefore, his plea of guilty served as a confession to the murder of Carl Eugene Boyd and an admission to the truthfulness of all of the facts surrounding his involvement. Accordingly, Defendant waived all defenses available to him, and he cannot show materiality under Section 15A-269(a)(1).

The majority relies on *State v. Randall*, 259 N.C. App. 885, 817 S.E.2d 219 (2018) in determining that a defendant who pleads guilty may seek post-conviction DNA testing pursuant to N.C. Gen. Stat. § 15A-269. However, as set forth above, *Sayre* should be viewed as controlling in this case. "The Court of Appeals has no authority to overrule decisions of the Supreme Court and has the responsibility to follow those decisions until otherwise ordered by the Supreme Court," thus this Court's decision should be controlled by *Sayre*. *Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) (*purgandum*).

In addition, the majority misses the mark on its discussion of the term "verdict" in N.C. Gen. Stat. § 15A-269(b). The majority defines "verdict" and even quotes case law from our Supreme Court telling us what that term means. But, the majority, without any citation or attribution, simply declares that "the General

Assembly intended for 'verdict' to be construed more broadly, to mean 'resolution,' 'judgment,' or 'outcome' in a particular matter."

"When the language of a statute is plain and free from ambiguity, expressing a single, definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended, and the statute must be interpreted accordingly." *Dep't of Transp. v. Adams Outdoor Advert. of Charlotte Ltd. P'ship*, 370 N.C. 101, 107, 804 S.E.2d 486, 492 (2017) (citation and quotation marks omitted). Legislative intent "may be found first from the plain language of the statute . . . . If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so." *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016) (citation and quotation marks omitted). "The intent of the legislature . . . is to be found not in what the legislature meant to say, but in the meaning of what it did say." *Burnham v. Adm'r, Unemployment Comp. Act*, 184 Conn. 317, 325, 439 A.2d 1008, 1012 (1981).

The majority finds no ambiguity in the term "verdict;" it simply laments the plain meaning of the statute.

If the plain language of Section 15A-269 is not clear enough, the General Assembly has established what a verdict is. N.C. Gen. Stat. § 15A-1237, titled "Verdict," states that:

> (a)     The verdict must be in writing, signed by the foreman, and made a part of the record of the case.

> (b)     The verdict must be unanimous, and must be returned by the jury in open court.
> (c)     If the jurors find the defendant not guilty on the ground that he was insane at the time of the commission of the offense charged, their verdict must so state.
> (d)     If there are two or more defendants, the jury must return a separate verdict with respect to each defendant. If the jury agrees upon a verdict for one defendant but not another, it must return that verdict upon which it agrees.
> (e)     If there are two or more offenses for which the jury could return a verdict, it may return a verdict with respect to any offense, including a lesser included offense on which the judge charged, as to which it agrees.

N.C. Gen. Stat. § 15A-1237 (2019).

Accordingly, for there to be "a reasonable probability that the *verdict* would have been more favorable to the defendant," under Section 15A-269, there must have been a verdict returned by a jury. N.C. Gen. Stat. § 15A-269(b)(2) (emphasis added). Use of the term "verdict" obviously has a "single, definite and sensible meaning." *Adams Outdoor Advert. of Charlotte Ltd. P'ship*, 370 N.C. at 107, 804 S.E.2d at 492. The majority should be faithful to the plain language of the statute, and not rewrite it with its own definition.

Also, the requirement of an affidavit of innocence in Section 15A-269(b)(3) is inconsistent with a defendant's plea of guilty. Defendants provide sworn answers to the questions on their transcript of plea. A defendant who, under oath, admits guilt to a charged offense, cannot thereafter provide a truthful affidavit of innocence. Allowing sham affidavits makes a mockery of the procedure established by the General Assembly.

Defendant here swore under oath that he was in fact guilty of murdering and robbing Carl Eugene Boyd in September 1992. Twenty-three years later he signed a document and swore that he was innocent. It cannot be both. This demonstrates just another reason why a defendant cannot plead guilty and later be entitled to post-conviction DNA testing pursuant to the plain language of N.C. Gen. Stat. § 15A-269.