IN THE SUPREME COURT OF NORTH CAROLINA

No. 307PA15-2

Filed 8 June 2018

THE KIMBERLEY RICE KAESTNER 1992 FAMILY TRUST

v.

NORTH CAROLINA DEPARTMENT OF REVENUE

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 789 S.E.2d 645 (2016), affirming an opinion and order of summary judgment dated 23 April 2015 entered by Judge Gregory P. McGuire, Special Superior Court Judge for Complex Business Cases appointed by the Chief Justice pursuant to N.C.G.S. § 7A-45.4, in Superior Court, Wake County. Heard in the Supreme Court on 11 October 2017.

*Moore & Van Allen PLLC, by Thomas D. Myrick, Neil T. Bloomfield, Jonathan M. Watkins, and Kara N. Bitar, for plaintiff-appellee.*

*Joshua H. Stein, Attorney General, by Matthew W. Sawchak, Solicitor General, Tenisha S. Jacobs, Special Deputy Attorney General, and James W. Doggett, Deputy Solicitor General; and Law Office of Robert F. Orr, by Robert F. Orr, for defendant-appellant.*

JACKSON, Justice.

In this case we consider whether defendant North Carolina Department of Revenue could tax the income of plaintiff The Kimberly Rice Kaestner 1992 Family Trust pursuant to N.C.G.S. § 105-160.2 solely based on the North Carolina residence of the beneficiaries during tax years 2005 through 2008.  Because we determine that

plaintiff did not have sufficient minimum contacts with the State of North Carolina to satisfy due process requirements of the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Constitution of North Carolina, we conclude that the taxes at issue were collected unconstitutionally and, therefore, affirm the decision of the Court of Appeals affirming the North Carolina Business Court's 23 April 2015 Opinion and Order on Motions for Summary Judgment in favor of plaintiff.

As the Business Court noted, the underlying, material facts of this case as established by the evidence in the record are not in dispute. The Joseph Lee Rice, III Family 1992 Trust was created in New York in 1992 for the benefit of the children of the settlor Joseph Lee Rice, III pursuant to a trust agreement between Rice and the initial trustee, William B. Matteson. In 2005 Matteson was replaced as trustee by David Bernstein, who was a resident of Connecticut. Bernstein remained in the position of trustee and remained a Connecticut resident during the entire period of time relevant to this case. The trust was and is governed by the laws of the State of New York, of which Rice was a resident. No party to the trust resided in North Carolina until Rice's daughter and a primary beneficiary of the trust, Kimberly Rice Kaestner, moved to North Carolina in 1997.

On 30 December 2002, the trust was divided into three share sub-trusts one each for the benefit of Rice's three children, including Kaestner. The sub-trusts were divided into three separate trusts in 2006 by Bernstein for administrative

convenience. Plaintiff is the separate share trust formed for the benefit of Kaestner and her three children, all of whom resided in North Carolina during the tax years at issue.

During the tax years at issue, the assets held by plaintiff consisted of various financial investments, and the custodians of those assets were located in Boston, Massachusetts. Documents related to plaintiff such as ownership documents, financial books and records, and legal records were all kept in New York. All of plaintiff's tax returns and accountings were prepared in New York.

None of the beneficiaries of plaintiff had an absolute right to any of plaintiff's assets or income because distributions could only be made at the discretion of Bernstein, who had broad authority to manage the property held by plaintiff. No distributions were made to beneficiaries in North Carolina, including Kaestner, during the tax years at issue; however, in January 2009, plaintiff loaned $250,000 to Kaestner at Bernstein's discretion to enable her to pursue an investment opportunity. This loan was repaid.

The terms of the original trust provided that the trustee was to distribute the trust assets to Kaestner when she reached the age of forty. Before her fortieth birthday on 2 June 2009, Kaestner had conversations with her father and Bernstein about whether she wished to receive the trust assets on that date. Ultimately, she requested to extend the trust, and accordingly, Bernstein transferred the assets of

plaintiff into a new trust, the KER Family Trust, in 2009. That transfer occurred after the tax years at issue, and KER Family Trust is not a party to this case.

In managing plaintiff, Bernstein provided Kaestner with accountings of trust assets, and she received legal advice regarding plaintiff from Bernstein and his firm. Kaestner and her husband also met with Bernstein in New York to discuss investment opportunities for the trust and whether Kaestner desired to receive income distribution as set forth in the original trust agreement.

During tax years 2005 through 2008, defendant taxed plaintiff on income accumulated each year, regardless of whether any of that income was distributed to any of the North Carolina beneficiaries. Plaintiff sought a refund of those taxes totaling more than $1.3 million, including $79,634.00 paid for 2005, $106,637.00 paid for 2006, $1,099,660.00 paid for 2007, and $17,241.00 paid for 2008. Defendant denied the refund request on 11 February 2011.

On 21 June 2012, plaintiff filed a complaint in Superior Court, Wake County, alleging that defendant wrongfully denied plaintiff's request for a refund because N.C.G.S. § 105-160.2 is both unconstitutional on its face and as applied to collect income taxes from plaintiff during those tax years. Plaintiff claimed that the taxes collected pursuant to section 105-160.2 violate the Due Process Clause because plaintiff did not have sufficient minimum contacts with the State of North Carolina. Plaintiff also claimed that the taxes violate the Commerce Clause on several grounds,

including that the tax was not applied to an activity with a substantial nexus to the taxing state. Plaintiff claimed that consequently, the tax also violated Article I, Section 19 of the state constitution. Based on these claims, plaintiff requested a declaration that section 105-160.2 is unconstitutional and an order from the court requiring defendant to refund any taxes, penalties, and interest paid by plaintiff for tax years 2005 through 2008, and enjoining defendant from enforcing any future assessments against plaintiff pursuant to section 105-160.2. Subsequent evidence indicated that penalties were assessed against plaintiff for tax years 2005 and 2006. These penalties were not paid by plaintiff and were ultimately waived at plaintiff's request, rendering moot that specific portion of plaintiff's claim for relief.

In accord with N.C.G.S. § 7A-45.4(b), this case was designated as a mandatory complex business case by the Chief Justice on 19 July 2012. On 11 February 2013, the Business Court issued an Opinion and Order on Defendant's Motion to Dismiss in which it granted the motion as to plaintiff's claim for injunctive relief, but denied the motion as to plaintiff's constitutional claims.

Relevant to this appeal, plaintiff filed a motion for summary judgment on its constitutional claims on 8 July 2014, and defendant filed its own motion for summary judgment on 4 September 2014. In its Opinion and Order on Motions for Summary Judgment, the Business Court observed that when a taxed entity such as plaintiff is not physically present in the taxing state, the taxed entity must "purposefully avail[ ] itself of the benefits of an economic market in the forum state" for the tax to satisfy

due process requirements. *Kimberley Rice Kaestner 1992 Family Trust v. N.C. Dep't of Revenue*, No. 12 CVS 8740, 2015 WL 1880607, at *4 (N.C. Super. Ct. Wake County (Bus. Ct.) Apr. 23, 2015), *aff'd*, ___, N.C. App. ___, 789 S.E.2d 645 (2016) (quoting *Quill Corp. v. North Dakota*, 504 U.S. 298, 307, 112 S. Ct. 1904, 1910 (1992)). Determining that plaintiff did not purposefully avail itself of the benefits of the taxing state based solely on the beneficiaries' residence in North Carolina, the Business Court concluded that the provision of section 105-160.2 allowing taxation of trust income "that is for the benefit of a resident of this State," N.C.G.S. § 105-160.2 (2005), violated both the Due Process Clause and Article I, Section 19 of the state constitution as applied to plaintiff. Applying the four-pronged analysis for determining the constitutionality of a tax pursuant to the Commerce Clause as set forth by the United States Supreme Court in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S. Ct. 1076, 1079 (1977), the Business Court also determined that the same provision of section 105-160.2 violated the Commerce Clause as applied to plaintiff. Therefore, the Business Court denied defendant's motion for summary judgment, granted plaintiff's motion for summary judgment, and ordered that any taxes and penalties paid by plaintiff pursuant to section 105-160.2 be refunded with interest.

Defendant noticed its appeal to the Court of Appeals on 22 May 2015. Before that court, defendant challenged the substantive conclusions of the Business Court that taxation of the trust based solely on the residency of the beneficiaries violated both the Due Process and Commerce Clauses as applied to plaintiff. *Kaestner 1992*

*Family Tr. v. N.C. Dep't of Revenue*, ___ N.C. App. ___, ___, 789 S.E.2d 645, 647-48 (2016). Like the Business Court, the Court of Appeals also reasoned from the United States Supreme Court's guidance that "[t]he Due Process Clause requires [(1)] some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax, and [(2)] that the income attributed to the State for tax purposes must be rationally related to values connected with the taxing State." *Id.* at ___, 789 S.E.2d at 649 (second and third alterations in original) (quoting *Quill*, 504 U.S. at 306, 112 S. Ct. at 1909-10 (citations and internal quotation marks omitted)). Noting that a trust has a separate legal existence for the purpose of income taxes pursuant to *Anderson v. Wilson*, 289 U.S. 20, 27, 53 S. Ct. 417, 420 (1933), *Kaestner 1992 Family Tr.*, ___ N.C. App. at ___, 789 S.E.2d at 650, the Court of Appeals held that the connection between North Carolina and the trust based solely on the residence of the beneficiaries was insufficient to satisfy due process requirements, *id.* at ___, 789 S.E.2d at 651. Consequently, the Court of Appeals affirmed the Business Court's order granting summary judgment for plaintiff. *Id.* at ___, 789 S.E.2d at 651. The Court of Appeals chose not to address whether taxation of plaintiff also violated the Commerce Clause. *Id.* at ___, 789 S.E.2d at 651.

On appeal to this Court from the decision of the Court of Appeals, defendant continues to argue that plaintiff had minimum contacts with the State of North Carolina sufficient to satisfy due process based on the presence of the beneficiaries in the state. Defendant also argues that plaintiff had sufficient minimum contacts with

North Carolina through certain acts of the trustee whereby plaintiff benefitted from "the ordered society maintained by taxation in North Carolina." We disagree.

"Our standard of review of an appeal from summary judgment is de novo." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citing *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)). "Under the *de novo* standard of review, the [Court] 'consider[s] the matter anew[ ] and freely [substitutes] its own judgment for' [that of the lower court]." *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, 369 N.C. 250, 257, 794 S.E.2d 785, 791 (2016) (first and fifth alterations in original) (quoting *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 660, 599 S.E.2d 888, 895 (2004) (second and third alterations in original)). On a motion for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2017).

The relevant provision of section 105-160.2 has remained substantively unchanged since the tax years at issue and states that income tax on an estate or trust "is computed on the amount of the taxable income of the estate or trust that is for the benefit of a resident of this State." *Id.* § 105-160.2 (2017). In its complaint and motion for summary judgment, plaintiff maintained that this section is both unconstitutional on its face and as applied to plaintiff. We presume "that any act

passed by the legislature is constitutional, and [we] will not strike it down if [it] can be upheld on any reasonable ground." *State v. Bryant*, 359 N.C. 554, 564, 614 S.E.2d 479, 486 (2005) (quoting *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 281-82 (1998) (second alteration in original)). Consequently, "[a]n individual challenging the facial constitutionality of a legislative act 'must establish that no set of circumstances exists under which the [a]ct would be valid.'" *Thompson*, 349 N.C. at 491, 508 S.E.2d at 282 (second alteration in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987)). Given this exacting standard and that the allegations and evidence appear relevant solely to whether defendant unconstitutionally collected income taxes from plaintiff for tax years 2005 through 2008, we consider only whether section 105-160.2 is unconstitutional as applied to plaintiff to collect the taxes at issue.

In considering an as-applied challenge to the constitutionality of a statute, we look to whether the statute is constitutional in the limited context of the facts of the case before us. Then, as with any constitutional challenge, "[i]f there is a conflict between a statute and the Constitution, this Court must determine the rights and liabilities or duties of the litigants before it in accordance with the Constitution, because the Constitution is the superior rule of law in that situation." *Adams v. N.C. Dep't of Nat. & Econ. Res.*, 295 N.C. 683, 690, 249 S.E.2d 402, 406 (1978) (quoting *Nicholson v. State Educ. Assistance Auth.*, 275 N.C. 439, 447, 168 S.E.2d 401, 406 (1969)).

The Fourteenth Amendment directs that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. Similarly, our state constitution declares that "[n]o person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. Indeed, we have determined that "[t]he term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with 'due process of law' as used in the Fourteenth Amendment to the Federal Constitution." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (quoting *In re Moore*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976)). Accordingly, our analysis of plaintiff's due process challenge below also applies to plaintiff's state constitutional claim.

When applied to taxation, "[t]he Due Process Clause 'requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.'" *Quill*, 504 U.S. at 306, 112 S. Ct. at 1909 (quoting *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-45, 74 S. Ct. 535, 539 (1954)). Due process also requires that "the 'income attributed to the State for tax purposes must be rationally related to values connected with the taxing State,'" *id.* at 306, 112 S. Ct. at 1909-10 (internal quotation marks omitted) (quoting *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 273, 98 S. Ct. 2340, 2344 (1978)); however, in this case we are concerned only with the first requirement. This "minimum connection," which is more commonly referred to as "minimum contacts," *see id.* at 307, 112 S. Ct. at 1910 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)), exists when

the taxed entity "purposefully avails itself of the benefits of an economic market" in the taxing state "even if it has no physical presence in the State," *id.* at 307, 112 S. Ct. at 1910 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 2184 (1985)). The Court in *Quill Corporation* therefore declared: "[T]o the extent that our decisions have indicated that the Due Process Clause requires physical presence in a State" for imposition and collection of a tax, "we overrule those holdings as superseded by developments in the law of due process." *Id.* at 308, 112 S. Ct. at 1911. Applying that standard, the Court went on to hold that the plaintiff in *Quill Corporation* "purposefully directed its activities at North Dakota residents, that the magnitude of those contacts [was] more than sufficient for due process purposes, and that the use tax [was] related to the benefits Quill receive[d] from access to the State," *id.* at 308, 112 S. Ct. at 1911, when the plaintiff generated revenue of almost $1 million annually from selling office equipment and supplies to approximately 3,000 customers in North Dakota even though all merchandise was delivered from out of state by mail or common carriers, *id.* at 302, 112 S. Ct. at 1907-08.

We have similarly determined that a finding of minimum contacts sufficient to satisfy due process "will vary with the quality and nature of the [party's] activity, but it is essential in each case that there be some act by which the [party] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Skinner v. Preferred Credit*, 361 N.C. 114, 123, 638 S.E.2d 203, 210-11 (2006) (quoting *Chadbourn, Inc. v. Katz*, 285

N.C. 700, 705, 208 S.E.2d 676, 679 (1974)). In light of *Quill Corporation* and our understanding of minimum contacts analysis, we therefore consider defendant's first argument in terms of whether plaintiff can be said to have minimum contacts with North Carolina based on the presence of its beneficiaries in our State.

The Supreme Court has observed that even though a "trust is an abstraction . . . . the law has seen fit to deal with this abstraction for income tax purposes as a separate existence, making its own return under the hand of the fiduciary and claiming and receiving its own appropriate deductions." *Anderson*, 289 U.S. at 27, 53 S. Ct. at 420. The Internal Revenue Code imposes a separate tax on the income of trusts, *see* 26 U.S.C. § 1(e) (2012), implicitly recognizing, at least for tax purposes, that a trust is a separate entity to which income is separately attributed. Any tax on that income is physically paid by the fiduciary or trustee, with the amount of the tax being "computed in the same manner as in the case of an individual." *Id.* § 641(a)-(b). In North Carolina "[t]he taxable income of an estate or trust is the same as taxable income for such an estate or trust under the provisions of the Code." N.C.G.S. § 105-160.2. Neither the Code nor Chapter 105 conflates the income of the trust with the income of a beneficiary.

In *Brooke v. City of Norfolk* the Supreme Court considered whether the City of Norfolk and Commonwealth of Virginia had violated the Due Process Clause by taxing the body of a Maryland trust when none of the property held by the trust had ever been present in Virginia. 277 U.S. 27, 28, 48 S. Ct. 422, 422 (1928). Although

the Supreme Court applied presence-focused due process analysis that has since been supplanted by the minimum contacts test, *see Quill*, 504 U.S. at 308, 112 S. Ct. at 1911, the Court also recognized that a trust and its beneficiary are legally independent entities when it observed that the property held by the trust "is not within the State, does not belong to the [beneficiary] and is not within her possession or control. The assessment is a bare proposition to make the [beneficiary] pay upon an interest to which she is a stranger," *Brooke*, 277 U.S. at 29, 48 S. Ct. at 422.

That plaintiff and its North Carolina beneficiaries have legally separate, taxable existences is critical to the outcome here because a taxed entity's minimum contacts with the taxing state cannot be established by a third party's minimum contacts with the taxing state. *See Walden v. Fiore*, ___ U.S. ___, ___, 134 S. Ct. 1115, 1122 (2014) (stating that "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State" (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873 (1984))); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40 (1958) ("The unilateral activity of those who claim some relationship with a nonresident [party] cannot satisfy the requirement of contact with the forum State."). Here it was plaintiff's beneficiaries, not plaintiff, who reaped the benefits and protections of North Carolina's laws by residing here. Because plaintiff and plaintiff's beneficiaries are separate legal entities, due process was not satisfied solely from the beneficiaries' contacts with North Carolina.

Defendant challenges this conclusion by citing to two decisions in which foreign jurisdictions allegedly reached the opposite result. The Supreme Court of Connecticut held that taxation of an *inter vivos* trust did not violate due process because the beneficiary of the trust was a Connecticut domiciliary. *Chase Manhattan Bank v. Gavin*, 249 Conn. 172, 204, 733 A.2d 782, 802, *cert. denied*, 528 U.S. 965, 120 S. Ct. 401 (1999). Describing the domicile of the beneficiary as the "critical link," the Court in *Gavin* went on to reason that the beneficiary "enjoyed all of the protections and benefits afforded to other domiciliaries. Her right to the eventual receipt and enjoyment of the accumulated income was, and so long as she is such a domiciliary will continue to be, protected by the laws of the state." *Id.* at 204, 733 A.2d at 802. Therefore, the Court concluded in *Gavin*:

> [J]ust as the state may tax the undistributed income of a trust based on the presence of the trustee in the state because it gives the trustee the protection and benefits of its laws; it may tax the same income based on the domicile of the sole noncontingent beneficiary because it gives her the same protections and benefits.

*Id.* at 205, 733 A.2d at 802 (internal citation omitted). Defendant also cites to a decision of the Supreme Court of California for the similar proposition that a "beneficiary's state of residence may properly tax the trust on income which is payable in the future to the beneficiary, although it is actually retained by the trust, since that state renders to the beneficiary that protection incident to his eventual enjoyment of such accumulated income." *McCulloch v. Franchise Tax Bd.*, 61 Cal. 2d 186, 196, 390 P.2d 412, 419 (1964) (emphasis omitted).

We do not find either *Gavin* or *McCulloch* persuasive in deciding the present case. The Court in *Gavin* erroneously failed to consider that a trust has a legal existence apart from the beneficiary and that, consequently, for taxation to satisfy due process pursuant to *Quill*, the trust itself must have "some definite link, some minimum connection" with the taxing state by "purposefully avail[ing] itself of the benefits of an economic market" in that state. *Quill*, 504 U.S. at 306-07, 112 S. Ct. at 1909-10. Furthermore, both the Court in *Gavin* and defendant, in its arguments before this Court, misconstrue a trust's existence as "a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person," *Wescott v. First & Citizens Nat'l Bank of Elizabeth City*, 227 N.C. 39, 42, 40 S.E.2d 461, 462-63 (1946) (quoting Restatement (First) of Trusts § 2 (Am. Law Inst. 1935)), to mean that any possible benefit received by the beneficiary may be imputed to the trust. That conclusion simply does not follow.

In contrast to *Gavin*, several other jurisdictions have applied reasoning similar to our analysis here in the context of deciding whether taxation of a given trust violated due process. *See Linn v. Dep't of Revenue*, 2013 IL App (4th) 121055, ¶ 33, 2 N.E.3d 1203, 1211 (2013) (applying *Quill* and holding that there was insufficient contact between Illinois and the taxed trust to satisfy due process when the trust, *inter alia*, "had nothing in and sought nothing from Illinois" and conducted all of its business in Texas), *appeal dismissed*, 387 Ill. Dec. 512, 22 N.E.3d 1165 (2014);

*Fielding v. Comm'r of Revenue*, File Nos. 8911–R, 8912–R, 8913–R, 8914–R, 2017 WL 2484593, at \*19-20 (Minn. T.C. May 31, 2017) (deciding that taxation of an *inter vivos* trust based solely on the in-state domicile of the grantor at the time the trust became irrevocable violated due process); *Residuary Tr. A v. Director, Div. of Taxation*, 27 N.J. Tax 68, 72-73, 78 (2013) (holding that neither the New Jersey domicile of a deceased testator nor the New Jersey business interests of several corporations in which the testamentary trust held stock justified New Jersey's taxation of "undistributed income from sources outside New Jersey" pursuant to the due process minimum contacts standard), *aff'd per curiam*, 28 N.J. Tax 541 (2015); *T. Ryan Legg Irrevocable Tr. v. Testa*, 149 Ohio St. 3d 376, 2016-Ohio-8418, 75 N.E.3d 184, at ¶ 68 (2016) (applying *Quill* and holding that a tax assessment by Ohio against a Delaware trust did not violate due process when the trust was created by an Ohio resident to dispose of his interest in a corporation that "conducted business in significant part in Ohio" and the settlor's "Ohio contacts [were] still material for constitutional purposes"), *cert. denied*, ___ U.S. ___, 138 S. Ct. 222 (2017).

*McCulloch*, on the other hand, was decided before *Quill Corporation*, and therefore has a limited ability to inform our application of the Court's due process analysis in *Quill*. Moreover, we find *McCulloch* to be factually distinguished from the present case because the taxed entity in that case was both a beneficiary and a trustee of the trust and also resided in the taxing jurisdiction. Indeed, in holding that the taxes at issue did not violate due process, the Court in *McCulloch* particularly

relied on the fact that the trustee was a domiciliary of the taxing jurisdiction. *See McCulloch*, 61 Cal. 2d at 194, 390 P.2d at 418. However, that circumstance is not present in this case.

As an alternative to its argument that due process was satisfied based on the North Carolina residence of the beneficiaries, defendant also presents the theory that taxation satisfied due process here because plaintiff "reached out to North Carolina by purposefully taking on a long-term relationship with the trust's beneficiaries, even though the trustees . . . never entered the state." In support, defendant notes that Bernstein restructured the original trust for Kaestner's benefit, regularly communicated with her about management of plaintiff, and directed a loan to Kaestner from plaintiff's assets—all actions that, according to defendant, indicated that plaintiff would have a continuing relationship with Kaestner while she was in North Carolina.

This argument stems from misapprehension of both the facts and law relevant to this case. The undisputed evidence in the record shows that contact between Bernstein and Kaestner regarding administration of the trust was infrequent—consisting of only two meetings during the tax years in question, both of which occurred in New York. Any connection between plaintiff and North Carolina based on the loan is also irrelevant given that the loan was issued in January 2009, after the tax years at issue. Additionally, the United States Supreme Court has directed that " 'minimum contacts' analysis looks to the defendant's contacts with the forum

State itself, not the defendant's contacts with persons who reside there." *Walden*, ___ U.S. at ___, 134 S. Ct. at 1122 (citations omitted). As we have already stated, for due process purposes plaintiff, as a separate legal entity in the context of taxation, would have needed to purposefully avail *itself* of the benefits and protections offered by the State. *See Quill*, 504 U.S. at 306-07, 112 S. Ct. at 1909-10. Mere contact with a North Carolina beneficiary does not suffice.

For taxation of a foreign trust to satisfy the due process guarantee of the Fourteenth Amendment and the similar pledge in Article I, Section 19 of our state constitution, the trust must have some minimum contacts with the State of North Carolina such that the trust enjoys the benefits and protections of the State. When, as here, the income of a foreign trust is subject to taxation solely based on its beneficiaries' availing themselves of the benefits of our economy and the protections afforded by our laws, those guarantees are violated. Therefore, we hold that N.C.G.S. § 105-160.2 is unconstitutional as applied to collect income taxes from plaintiff for tax years 2005 through 2008. Accordingly, we affirm the decision of the Court of Appeals that affirmed the Business Court's order granting summary judgment for plaintiff and directed that defendant refund to plaintiff any taxes paid by plaintiff pursuant to section 105-160.2 for tax years 2005 through 2008.

AFFIRMED.

Justice ERVIN dissenting.

As the majority correctly indicates, the proper resolution of this case hinges upon the extent, if any, to which the taxpayer had sufficient minimum contacts with North Carolina to satisfy federal due process requirements. Although we are required to make what I believe to be a close call in this case, I feel compelled to conclude, after careful scrutiny of the record in light of the applicable relevant legal standard, that taxpayer "purposefully avail[ed] itself of the benefits of an economic market" in North Carolina despite having "no physical presence in the State." *Quill Corp. v. North Dakota*, 504 U.S. 298, 307, 112 S. Ct. 1904, 1910, 119 L. Ed. 2d 91, 102-03 (1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528, 543 (1985)). As a result, I respectfully dissent from my colleagues' decision.

According to the undisputed facts contained in the record as identified by the trial court, Joseph Lee Rice, III, established the Rice Family 1992 Trust for the benefit of his children in 1992. The Family Trust was created in New York, with the trust instrument providing that the Family Trust was to be governed by New York law. In 2005, David Bernstein, a resident of Connecticut, was appointed trustee of the Family Trust and continued to act in that capacity throughout the time period at issue in this case. In 2006, Mr. Bernstein, physically divided the Family Trust into three trusts, one of which, plaintiff Kimberly Rice Kaestner 1992 Family Trust, was intended to benefit Kimberly Rice Kaestner and her three children, "all of whom were

residents and domiciliaries of North Carolina in the tax years at issue." Mr. Bernstein served as the trustee of the Kaestner Trust following the division of the Family Trust into its three constituent parts.

Throughout the entire interval from 2005 through 2008, which are the tax years at issue in this case, the documents related to the Kaestner Trust were kept in New York, while the custodian of the Kaestner Trust's assets was located in Boston, Massachusetts. No distributions were made to any beneficiary of the Kaestner Trust during the 2005 through 2008 tax years. During the period from 2005 through 2008, Mr. Bernstein communicated with Ms. Kaestner regarding the Kaestner Trust and provided her with accountings relating to the Kaestner Trust covering the periods from 22 December 2005 through 31 December 2006 and 23 June 2006 through 8 October 2009. In addition, Mr. Bernstein and the law firm with which he was affiliated provided Ms. Kaestner with legal advice regarding matters relating to the Kaestner Trust.

As the entire Court appears to agree, the resolution of this case hinges upon a proper understanding of the decision of the United States Supreme Court in *Quill*, which involved a Delaware corporation that sold office equipment and had physical offices and warehouses in Illinois, California, and Georgia. *Quill*, 504 U.S. at 302, 112 S. Ct. at 1907, 119 L. Ed. at 100. Quill solicited business by using catalogs, flyers, and telephone calls and placing advertisements in national periodicals. *Id*. at 302, 112 S. Ct. at 1907, 119 L. Ed. at 100. As a result of its business activities, Quill had

about 3,000 customers and made $1 million in sales in North Dakota during the relevant period. *Id*. at 302, 112 S. Ct. at 1908, 119 L. Ed. at 100. A North Dakota statute provided that retailers, including mail-order companies, were subject to a use tax "even if they maintain no property or personnel in North Dakota." *Id*. at 303, 112 S. Ct. at 1908, 119 L. Ed. at 100. The State argued that, despite Quill's lack of a physical presence within North Dakota, the State "had created 'an economic climate that fosters demand for' Quill's products, maintained a legal infrastructure that protected that market, and disposed of 24 tons of catalogs and flyers mailed by Quill into the State every year." *Id*. at 304, 112 S. Ct. at 1908-09, 119 L. Ed. at 101.

According to the United States Supreme Court, "[t]he Due Process Clause 'requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax' and that the 'income attributed to the State for tax purposes must be rationally related to values connected with the taxing State.' "[1] *Id*. at 306, 112 S. Ct. at 1909-10, 119 L. Ed. 2d at 102 (first quoting *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344-45, 74 S. Ct. 535, 539, 98 L. Ed. 744 (1954); then quoting *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 273, 98 S. Ct. 2340, 2344, 57 L. Ed. 2d 197 (1978)). As the United States Supreme Court noted, it has "abandoned more formalistic tests that focused on [an entity's] 'presence' within a State in favor of a more flexible inquiry into . . . [an entity's] contacts with the forum." *Id*. at 307,

---

[1] The extent to which the second prong of the due process analysis has been satisfied does not appear to be before us in this case at this time.

112 S. Ct. at 1910, 119 L. Ed. 2d at 102 (citing, *inter alia*, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "Applying these principles, we have held that if a foreign [entity] purposefully avails itself of the benefits of an economic market in the forum State, it may subject itself to the State's" collection of taxes "even if it has no physical presence in the State." *Id.* at 307, 112 S. Ct. at 1910, 119 L. Ed. 2d at 103 (citing *Burger King Corp.*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528). As a result, given that Quill had "purposefully directed its activities at North Dakota residents," its contacts with North Dakota were "more than sufficient for due process purposes." *Id.* at 308, 112 S. Ct. at 1911, 119 L. Ed. 2d at 104.

The parties have spent considerable time and effort debating the extent, if any, to which the fact that the beneficiaries of the Kaestner Trust resided in North Carolina during the relevant tax years has any bearing on the required due process analysis. In reaching the conclusion that the residence of the beneficiaries has no bearing upon the proper resolution of this case, my colleagues have deemed *Chase Manhattan Bank v. Gavin*, 249 Conn. 172, 733 A.2d 782, *cert. denied*, 528 U.S. 965, 120 S. Ct. 401, 145 L. Ed. 2d 312 (1999), and *McCulloch v. Franchise Tax Board*, 61 Cal. 2d 186, 390 P.2d 412 (1964), to be essentially irrelevant. I am not inclined to completely disregard either of those decisions, which, to the best of my knowledge, appear to be the only cases decided by state courts of last resort to address the question that is before us in this case, while recognizing that there are distinguishing

features which may serve to render them somewhat less persuasive than they might otherwise be.

Admittedly, the assertion of taxing authority over the inter vivos trust at issue in *Gavin* arose from a situation in which "the settlor of the trust was a Connecticut domiciliary when the trust was established and the beneficiary is a Connecticut domiciliary." *Gavin*, 249 Conn. at 183, 733 A.2d at 790. However, in upholding the taxability of the undistributed income held in an inter vivos trust, the Connecticut Supreme Court specifically stated that, "just as the state may tax the undistributed income of a trust based on the presence of the trustee in the state because it gives the trustee the protection and benefits of its laws," "it may tax the same income based on the domicile of the sole noncontingent beneficiary because it gives her the same protections and benefits." *Id.* at 205, 733 A.2d at 802. As a result, the Connecticut Supreme Court's decision with respect to the taxability of the undistributed income held in the inter vivos trust appears to me to hinge upon the residence of the beneficiary rather than the fact that the settlor had been a resident of Connecticut at the time that the inter vivos trust had been created.

I am loath to completely disregard *McCulloch* for similar reasons. Although the beneficiary of the trust at issue in *McCulloch* also served as one of the trustees, the California Supreme Court's analysis in that case clearly relies upon the status of the person in question as a beneficiary rather than upon his status as a trustee, with this fact being evidenced by the California Supreme Court's statement that "the

beneficiary's state of residence may properly tax the trust on income which is payable in the future to the beneficiary, although it is actually retained by the trust, since that state renders to the beneficiary that protection incident to his eventual enjoyment of such accumulated income." *McCulloch*, 61 Cal. 2d at 196, 390 P.2d at 419 (emphasis omitted). Similarly, while *McCulloch* antedates *Quill* and *Burger King*, the logic utilized by the California Supreme Court appears to me to rest upon the same considerations that underlie the United States Supreme Court's modern due process jurisprudence. For example, the California Supreme Court states that "[t]he tax imposed by California upon the beneficiary is constitutionally supported by a sufficient connection with, and protection afforded to, plaintiff as such beneficiary." *Id*. at 196, 390 P.2d at 419. As a result, I am unable to agree with my colleagues' determination that neither *Gavin* nor *McCulloch* has any bearing upon the proper resolution of this case and am inclined to be persuaded by their logic to believe that, while not dispositive, the presence of the beneficiaries of the Kaestner Trust in North Carolina has some bearing on the proper performance of the required due process analysis.

I also cannot concur in the argument adopted by the Court of Appeals to the effect that the United States Supreme Court has already made our decision for us in *Brooke v. City of Norfolk*, 277 U.S. 27, 48 S. Ct. 422, 72 L. Ed. 767 (1928). Although *Brooke* has not been overruled, it antedates *Quill* and *Burger King* and rests upon the sort of formalistic, presence-focused approach that the United States Supreme

Court rejected in those cases in favor of a less rigid "minimum connections" approach. *See Quill*, 504 U.S. 298, 112 S. Ct. 1904, 119 L. Ed. 2d 91; *Burger King*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528. In addition, *Brooke* involved an attempt by one state to tax a trust corpus held in another state, which is a very different undertaking than an attempt to tax the undistributed income of a non-North Carolina trust that is held for the benefit of a North Carolina resident.[2] The same logic renders the Kaestner Trust's reliance upon the decision of the United States Supreme Court in *Safe Deposit & Trust Co. of Baltimore v. Commonwealth of Virginia*, 280 U.S. 83, 50 S. Ct. 59, 74 L. Ed. 180 (1929), which involved an attempt to tax the corpus, rather than the undistributed income, of a non-jurisdictional trust based upon the existence of a resident beneficiary that the Court rejected on the basis of a pre-*Quill* method of analysis, unpersuasive. As a result, neither of these cases supports, much less compels, a decision in the Kaestner Trust's favor. Instead, my review of the decisions cited by both parties compels me to conclude that the only way to properly resolve this case involves reliance upon a very fact-specific analysis of the extent, if any, to which the Kaestner Trust "purposefully avail[ed] itself of the benefits of an economic market in the forum State," *see Quill*, 504 U.S. at 307, 112 S. Ct. at 1910, 119 L. Ed.

---

[2] Admittedly, this Court has not adopted the Court of Appeals' treatment of *Brooke* as dispositive in its opinion. Instead, the Court simply cites *Brooke* for the unexceptionable proposition that "a trust and its beneficiary are legally independent entities." For the reasons set forth in the text of this dissenting opinion, I believe that a proper due process analysis focused upon the activities of the Kaestner Trust in light of Ms. Kaestner's residence suffices to establish sufficient "minimum contacts" to support the Department of Revenue's attempt to tax the undistributed income applicable to Ms. Kaestner.

2d at 103, with this analysis deeming the presence of the beneficiary in North Carolina to be relevant, but not dispositive.

As the Supreme Court explained in *Burger King*,

> it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contact can defeat personal jurisdiction there.

471 U.S. at 476, 105 S. Ct. at 2184, 85 L. Ed. 2d at 544 (citations omitted). Although the assets contained in the Kaestner Trust were held in Boston, and the relevant documents were held in New York and although the trustee worked in New York and resided in Connecticut during the tax years at issue in this case, "business [was] transacted . . . by mail and wire communications across state lines," including those of North Carolina. *See id.* at 476, 105 S. Ct. at 2184, 85 L. Ed. 2d at 544. Among other things, Ms. Kaestner was known to be a resident of North Carolina at the time that the Kaestner Trust was created for her benefit. In addition, the trustee transmitted information to Ms. Kaestner, provided advice to Ms. Kaestner, and communicated with Ms. Kaestner in other ways with full knowledge of the fact that she resided in North Carolina. The Kaestner Trust could not have successfully carried out these functions in the absence of the benefits that North Carolina provided to Ms. Kaestner during the time that she lived here. As a result, I am unable

to conclude, given the applicable standard of review, that the Kaestner Trust lacked sufficient contacts with North Carolina to permit the State to tax the undistributed income held by the Kaestner Trust for Ms. Kaestner's benefit. Therefore, I see no due process violation. As a result, for all of these reasons, I respectfully dissent from my colleagues' decision to affirm the Court of Appeals' decision.